684 A.2d 143

**COMMONWEALTH of Pennsylvania**

v.

**Ruth Lynn BREIGHNER, Appellant.**

Superior Court of Pennsylvania.

Argued June 24, 1996.

Filed Oct. 7, 1996.

Jean Arena, Assistant Public Defender, Gettysburg, for appellant.

Michael George, District Attorney, Gettysburg, for Commonwealth, appellee.

Before McEWEN, President Judge, and DEL SOLE, BECK, TAMILIA, KELLY, POPOVICH, JOHNSON, HUDOCK and SCHILLER, JJ.

BECK, Judge.

We decide, *inter alia,* whether a district attorney who cannot prosecute a matter due to a conflict can authorize a prosecutor from another county to act or whether the conflicted district attorney must refer the matter to the Attorney General. We hold that the conflicted district attorney must refer the matter to the Attorney General.

In March of 1992 appellant Ruth Lynn Breighner was driving a car that collided with another vehicle. The collision, which occurred in Adams County, caused the death of the driver of the other car and seriously injured the passenger. As a result, Breighner was convicted of homicide by vehicle while under the influence,[1] involuntary manslaughter[2] and related charges.[3] She was sentenced to an aggregate term of three to seven years in prison and now appeals her judgments of sentence. We reverse and remand for a new trial.

Breighner's first claim of error regards a conflict of interest on the part of the prosecutor in the case. She also asserts that the evidence was insufficient as a matter of law to sustain her convictions. We address her sufficiency claim first since a finding in her favor on that issue would result in a dismissal of the charges.

■ Our standard is well-established. We assess the evidence in the light most favorable to the Commonwealth as verdict winner to determine whether all of the elements of the crimes were established beyond a reasonable doubt. *Commonwealth v. Berkowitz,* 537 Pa. 143, 641 A.2d 1161, 1163 (1994).

1. 75 Pa.C.S.A. § 3735.

2. 18 Pa.C.S.A. § 2504.

3. Driving Under the Influence of Alcohol, 75 Pa.C.S.A. § 3731; Recklessly Endangering Another Person, 18 Pa.C.S.A. § 2705.

 The evidence presented by the Commonwealth included the testimony of the passenger who survived the collision. He was the boyfriend of the deceased. He stated that Breighner's car approached them, crossed into their lane of traffic and collided with their car. Also testifying for the Commonwealth were two persons who observed Breighner at local taverns on the night of the accident. One witness described seeing Breighner in an intoxicated state several hours before the accident. The other witness testified to seeing Breighner less than one hour before the accident. That witness observed Breighner consume four shots of liquor in a fifty minute period.

The law enforcement officer who arrived at the scene of the accident testified that Breighner was highly intoxicated. She smelled of alcohol, had slurred speech and staggered as she walked. Other law enforcement and rescue personnel described Breighner as loud and using obscenities. An accident reconstruction expert opined that Breighner's vehicle crossed the center lane and struck the victims' car. In addition to the officers, the surviving victim, the expert and the people who saw Breighner drinking heavily just prior to the accident, the Commonwealth offered the testimony of the manager of the clinical laboratory at Gettysburg Hospital. He testified that he drew Breighner's blood approximately one hour after the accident and it had an alcohol content of .264%, more than two times the legal limit.

The evidence presented clearly was sufficient, if not overwhelming, to sustain Breighner's convictions. Witness observation of Breighner consuming significant amounts of alcohol just prior to the accident, the surviving passenger's testimony regarding Breighner's erratic driving at the time of the accident, Breighner's condition at the scene of the crime and her dangerously high blood alcohol level shortly after the accident combine to establish the elements of DUI. Further, the fact that one victim was killed and another was injured when Breighner's car crossed the center lane of traffic and caused the collision supports the convictions for reckless endangerment, involuntary manslaughter, homicide by vehicle and

homicide by vehicle DUI. We reject Breighner's sufficiency claims.

Breighner's second issue involves an inquiry completely separate from the tragic circumstances of her crimes. Some time after Breighner's arrest, a civil action was filed against her on behalf of the deceased. The plaintiff in that action retained the services of the law firm of Swope, Heiser and McQuaide. The district attorney of Adams County is a member of that firm.

After the civil action was filed, the Adams County District Attorney, Roy Keefer, disqualified himself from the prosecution because he was a member of the firm bringing the civil action and, therefore, had a conflict in proceeding in the case. Mr. Keefer (the "conflicted district attorney") appointed then Cumberland County District Attorney, now Pennsylvania Superior Court Judge, J. Michael Eakin (the "designated prosecutor"), to handle the case. Breighner's counsel filed pretrial motions to disqualify the designated prosecutor based on a conflict of interest. These motions were denied by the court.

Breighner now brings the issue before this court, asserting that she was deprived of a fair trial because the conflict of the original district attorney was transferred to the designated prosecutor whom the conflicted district attorney chose. Breighner requests a new trial.

In her motions to disqualify, Breighner asserted that Mr. Keefer's act of choosing who should prosecute this case did not cure the conflict that existed on the part of the Adams County District Attorney's Office. Breighner requested that Mr. Keefer refer the case to the Attorney General's Office under the authority of the Commonwealth Attorneys Act (the "Act"). That statute provides, in pertinent part:

> Prosecutions.-The Attorney General shall have the power to prosecute in any county criminal court the following cases:
>
> * * * * * *
>
> Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that

there is a potential for an actual or apparent conflict of interest on the part of the district attorney or his office. 71 P.S. § 732–205(a)(3).

Breighner concedes that the Act is not mandatory; however, she argues that referral to the Attorney General is the only way to cure the taint of the conflict. Essentially she claims that once the conflict arises, the conflicted district attorney can no longer make any decisions regarding the case, including whom he deems the proper person to handle the case. In response, the Commonwealth argues that Mr. Keefer's appointment of a neighboring county's district attorney to try the case, coupled with that attorney's independent prosecution of the matter, negates the conflict that once existed.

In *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700 (1992), our supreme court considered whether it was appropriate for a district attorney to delegate to an assistant the prosecution of an individual who was a defendant in a civil case in which the district attorney represented the plaintiff. The underlying facts were similar to this case. Eskridge was charged with homicide by vehicle and related charges in connection with a car accident and the death of one of his passengers. A civil lawsuit also was brought against Eskridge. Because the district attorney of Beaver County was a member of the firm representing the plaintiff, he assigned the matter to an assistant. Prior to trial, Eskridge raised the conflict issue. The district attorney initially offered to refer the matter to the Attorney General; however, the prosecutor handling the case alluded to a potential Rule 1100 problem should such a referral occur. Not willing to waive his right to a speedy trial, Eskridge agreed to be tried by the designated prosecutor.

The *Eskridge* court made a number of observations in deciding the issue before it. First, it noted that the district attorney had a direct financial interest in obtaining a conviction in appellant's case since the conviction would establish the tort alleged in the civil case. Second, the court stated that the Commonwealth improperly presented Eskridge with a "Hob-

son's choice," that is, the choice between a speedy trial or an impartial prosecutor. Third, the court reasoned that any prejudice suffered by Eskridge as a result of the conflict would not normally be susceptible to proof.

*Eskridge* holds that where a conflict of interest affecting the district attorney exists, prosecution by that district attorney or any other attorney in his office is barred regardless of whether actual prejudice can be established. Breighner asks that we extend *Eskridge* and hold that where the district attorney goes outside his office and appoints the prosecutor of his choice, the conflict remains.

The *Eskridge* court observed that the conflicted district attorney in that case maintained supervision and control of the assigned prosecutor. The Commonwealth insists that here the designated prosecutor was not under the guidance, control or supervision of the conflicted district attorney, therefore, the conflict was cured. Addressing that standard, Breighner draws our attention to the following examples of control and supervision in this case:

1) subpoenas, trial notices and letters in the case were signed by the conflicted district attorney;

2) help with scheduling and procedure was given to the designated prosecutor by the conflicted district attorney's office;

3) the designated prosecutor discussed bail issues with the conflicted district attorney;

4) the accident reconstruction expert for the Commonwealth was a witness procured by the conflicted district attorney's law partner; and

5) the designated prosecutor had a meeting with the conflicted district attorney's private law partner one week prior to trial and learned of a witness who later testified that she observed appellant drinking several shots of liquor just prior to the accident; that witness was revealed to appellant at time of trial.

The Commonwealth does not dispute that most of these events occurred. Instead, it argues that the designated prose-

cutor acted appropriately. For instance, the Commonwealth explains, the fact that Adams County subpoenas and letterhead were used in this case was not only logical, it was required because jurisdiction of the matter was in Adams County. Further, the record reflects that when addressing the issue of bail, the designated prosecutor merely stated he "had discussions with members of Adams County." The Commonwealth argues that this statement does not necessarily mean that the designated prosecutor spoke with the conflicted district attorney.[4] With respect to the meeting between the conflicted district attorney's law partner and the designated prosecutor one week before trial, the Commonwealth responds by asserting that the designated prosecutor was simply investigating the case and should not be precluded from using a witness merely because she was brought to his attention by a civil attorney.

One of the questions *Eskridge* raises is whether a conflict is legally significant only when it can be shown that the designated district attorney was under the supervision, guidance and control of the conflicted district attorney. We conclude that *Eskridge* does not stand for that proposition. Although *Eskridge* included an analysis of supervision, guidance and control, the case does not require a separate consideration of those factors. The *Eskridge* court merely used the analysis to support its conclusion that an assistant district attorney will of necessity be under control of his superior, the district attorney.

However, even if such a showing was mandatory, that burden has been met in this case. The first step the conflicted district attorney took here was officially to appoint the designated prosecutor as an assistant district attorney of Adams County in order to confer jurisdiction upon him. *See* 16 P.S. § 1420. The designated prosecutor had to be made an assistant of the conflicted district attorney in order to handle

4. The Commonwealth also states that even if the prosecutor conferred with the conflicted district attorney about bail, it would only show that he was trying to ascertain the customary amount of bail in Adams County for appellant's particular crimes.

the case.[5] He technically became a member of the Adams County District Attorney's Office, thereby bringing this case within the ambit of *Eskridge*. The record shows that although the designated prosecutor may not have sought guidance or supervision from the conflicted district attorney, the very posture of the case required him to have contact with the conflicted district attorney and his staff. Indeed, the circumstances of this case illustrate that even where a conflicted district attorney attempts to cure a conflict by temporarily naming another district attorney as his assistant, some amount of supervision, guidance and control on the part of the conflicted district attorney is unavoidable.

▮ We hold that once a conflict arises, it is improper for the conflicted district attorney to engage in any decision-making in the case, including choosing who will handle the prosecution.[6]

Sound public policy would require that a part-time district attorney give priority to his public duties and view them as taking precedence over his private practice. In his concurring opinion in *Eskridge*, Justice Cappy decried the fact that the economic concerns of the conflicted district attorney were more important than his elective duties. Characterizing the conflicted district attorney's withdrawal from the criminal case

---

5. Conversely, the Attorney General already had jurisdiction to prosecute the case pursuant to 71 Pa.C.S.A. § 732-205(a)(3).

6. The Commonwealth argues that referral to the Attorney General is not always the preferred option because of the manner in which the Attorney General may proceed. We reject this argument. The fact that a conflicted district attorney chooses not to refer a matter to the Attorney General because he or she opposes, for whatever reason, the manner in which the Attorney General may handle the case, presents the very danger we seek to avoid here. Consideration of the conflicted district attorney's discretionary preferences is no longer appropriate once a conflict arises.

The Commonwealth also argues that referring conflict cases to the Attorney General would be burdensome to that office in terms of manpower and funding. We find this argument unpersuasive. Pennsylvania must allocate its resources in such a manner to insure that all criminal defendants receive a fair trial. If the attorney general must assume additional cases in order to insure fair, conflict-free trials, then greater legal resources must be allocated to that office.

as both inappropriate and costly in terms of public dollars, Justice Cappy stated:

> I am of the opinion that once elected to office, a public servant's obligation is to the public interest, which must take precedence over any private interest that may be at stake.

*Eskridge, supra* at 391, 604 A.2d at 702. Justice Cappy opined that the conflicted district attorney's firm should have withdrawn from the civil litigation. We find Justice Cappy's observations particularly fitting in this case, where the civil action was filed some eight months after the Adams County District Attorney's Office began prosecuting the criminal matter.

While it is clear that under these circumstances the conflicted district attorney is permitted to make a choice between a civil action and a criminal case, it is likewise obvious that the conflicted district attorney stood to benefit significantly from a criminal conviction. A conviction against appellant would establish the tort in question. *See Garcia v. Bang,* 375 Pa.Super. 356, 544 A.2d 509 (1988) (violation of a statute is negligence *per se* ), *appeal denied,* 520 Pa. 617, 554 A.2d 509 (1989). Success in the criminal suit would be of great benefit in the civil suit. As a partner in the law firm representing the plaintiff, the conflicted district attorney stood to benefit economically from a conviction in the criminal case. *See Eskridge, supra* (conflicted district attorney had direct financial interest in obtaining a conviction in appellant's case). The rules which allow elected officials to hold public office while simultaneously engaging in related private legal practice cannot operate at the expense of the criminal defendant who is entitled to a fair trial. Public confidence in our system of justice demands the result we reach today.

■ We are careful to point out that our holding does not include a finding that actual prejudice inured to Breighner. We agree with the trial court that the record does not support such a conclusion. However, our supreme court explicitly held that "a defendant need not prove actual prejudice in order to

require that the conflict be removed." *Eskridge, supra* at 391, 604 A.2d at 702. In light of *Eskridge,* we are precluded from holding that an appellant must establish prejudice as a prerequisite to relief.

We hold that where a district attorney has a conflict in a case, he or she cannot designate another county's district attorney as a temporary assistant in an effort to cure the conflict. In such cases, all decision-making duties of the conflicted district attorney must cease and the matter must be referred to the Attorney General.

Judgment of sentence vacated, matter remanded so that it may be referred to the Attorney General for retrial.

JOHNSON, J., concurs and dissents, which McEWEN, P.J., concurs.

TAMILIA, J., dissents, which JOHNSON, J., joins.

JOHNSON, Judge, concurring and dissenting.

I have some doubt as to the propriety of this Court considering an issue which involves the supervisory authority of the Supreme Court of Pennsylvania in enforcing standards of conduct of our district attorneys. Moreover, assuming this Court's right to engage in this area, I cannot find that a conflicted district attorney is barred from making *any* decisions regarding a prosecution once a conflict has arisen. The holding of the majority, in establishing a *per se* rule constitutes an inappropriate extension of *Commonwealth v. Eskridge,* 529 Pa. 387, 604 A.2d 700 (1992). Accordingly, I must respectfully dissent.

I agree with the Majority that the evidence is sufficient in the instant case to sustain Ruth Lynn Breighner's convictions for homicide by vehicle while under the influence, involuntary manslaughter, and related charges. I am unable to agree, however, with the Majority's conclusion that the conflicted district attorney in this case was required to refer prosecution of Breighner to the Attorney General's office, rather than asking the District Attorney from a neighboring county to

prosecute. I therefore write separately to address both our right to consider this issue and the substantive issue itself.

The question of the distinct role of a criminal prosecutor and that prosecutor's professional responsibility is one which our supreme court addressed in *Commonwealth v. Eskridge, supra.* The issue was not framed in terms of a constitutional analysis but rather in terms of the Rules of Professional Conduct. *Id.* at 389–90, 604 A.2d at 701. While then-Justice (now Chief Justice) Flaherty alluded, without constitutional analysis, to the appellant's "constitutional right to an impartial prosecutor", 529 Pa. at 392, 604 A.2d at 702, there has been no express analysis implicating either the state or federal constitution in considering this matter of a district attorney's conflict of interest and the impact of that conflict on criminal procedure. *See and compare Commonwealth v. Dunlap,* 474 Pa. 155, 377 A.2d 975 (1977) (Roberts, J., opinion in support of reversal) (analysis based upon Pennsylvania Supreme Court Code of Professional Responsibility EC 7–13 (1974) and A.B.A. Standards Relating to the Prosecution Function § 1.2 (Approved Draft, 1971)); *Commonwealth v. Dunlap,* 233 Pa.Super. 38, 335 A.2d 364 (1975) (both majority and dissenting opinions based upon analysis of A.B.A. Standards Relating to the Prosecution Function).

Apart from Justice Flaherty's passing reference to a "constitutional right to an impartial prosecutor" in the *Eskridge* opinion, *supra,* I find no other reference to this issue as being one of constitutional dimension. The issue is one involving a matter of the professional conduct expected, or required, of a public prosecutor. I understand consideration of this issue to be the exclusive province of our supreme court.

In *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985), our supreme court expressly cautioned this Court against unwarranted intrusions upon that court's exclusive right to supervise the conduct of all courts and officers of the judicial branch. 507 Pa. at 218, 489 A.2d at 1298. I do not believe that alleged violations of the Rules of Professional Conduct or the Standards Relating to the Prosecution Function and the Defense

Function, or the impact any alleged violations of those standards might have on the administration of criminal justice can be reviewed by any tribunal other than those authorized by our supreme court. The issue we confront on this appeal is one within the administrative and supervisory functions of the Supreme Court of Pennsylvania over all of the attorneys in this Commonwealth. *Id.* However, since my colleagues have ventured upon this path, I feel obliged to set forth my views in dissent.

I turn now to the issue of the district attorney's conflict of interest. The Majority would posit the question as whether a district attorney who cannot prosecute a matter due to a conflict can authorize a prosecutor from another county to act or whether the conflicted district attorney must refer the matter to the Attorney General. The appellant, on the other hand, frames her contention in the guise of a "constitutional right to a fair trial by an impartial prosecutor." Brief for Appellant at 3. I would frame the question thusly: Whether the distinguished trial judge, the Honorable Oscar F. Spicer, P.J., committed an error of law or an abuse of discretion when, upon being confronted with a pretrial motion alleging conflict *per se,* he considered the limited averments of fact and argument presented, and denied the motion?

Our scope of review upon the denial of a pretrial motion to disqualify a prosecutor is to consider all of the uncontroverted averments of fact contained in the motion and to determine whether, on the facts averred, the moving party would have been entitled to relief as a matter of law or through the exercise of reasonable discretion by the trial court. In this case now before us, counsel for Ruth Lynn Breighner presented two separate motions to disqualify the District Attorney of Cumberland County. In the first motion, filed December 4, 1992, only two averments of fact are set forth. The motion averred that (1) the Adams County District Attorney ("Mr. Keefer") had disqualified himself because his law firm was involved in civil litigation arising from the same circumstances, and (2) Mr. Keefer appointed the Cumberland County District Attorney ("Mr. Eakin") to prosecute the case. The remaining

two paragraphs in the motion set forth the movant's conclusions that prosecution by Mr. Eakin would suffer from the same ethical problem that exists were the prosecution to be handled by an assistant district attorney and that the "proper method of avoiding the ethical issue" would be to appoint a special prosecutor from the Attorney General's Office. The prayer for relief in the first motion was that the court disqualify Mr. Keefer and any of his assistants or appointees, and that the court "require that the appointment be made through the State Attorney General's Office."

In the second, Renewed Motion to Disqualify Prosecutor, filed March 5, 1993, counsel for the defendant, after stating that the court had previously, on December 23, 1992, denied the first petition to disqualify, averred as follows:

1. Since [December 23, 1992,] various matters have occurred which Defendant requests to be made a matter of record in this case which is believed to support the request to disqualify the prosecutor. All matters referred to below are matters that were disclosed by the Attorney for the Commonwealth.

2. The matters referred to above are as follows:

A. The Adams County District Attorney's Office sent out trial notices.

B. Based on correspondence received from the prosecutor, it appears that the Adams County District Attorney's Office has issued subpoenas for the prosecution and it appears that its facilities have been used for witness interviews.

At the hearing on the initial Motion to Disqualify, in response to an inquiry from the court as to whether counsel felt that Mr. Keefer was going to control the actions or performance of Mr. Eakin, counsel for the defendant stated:

**MR. WILCOX:** It's not a matter of actual prejudice, Your Honor. Frankly, I don't think Mr. Keefer was going to direct anything or to deliberately prejudice anything.

It is a matter of really I suppose of ethics in appearances. There is no requirement for showing of any actual prejudice

according to the Supreme Court. We're not questioning motivation of anyone involved in this situation.

\* \* \* \* \* \*

**THE COURT:** Where did the Supreme Court say that this type of procedure is improper?

**MR. WILCOX:** Not on these facts, no. It was where the Assistant worked within the District Attorney's Office. The District Attorney tried to by appointing his assistant. I understand this is a step beyond that, Your Honor.

N.T. December 23, 1992 at 4, 5. After further colloquy, the trial court asked Mr. Eakin if he had anything that he wished to say. Mr. Eakin then stated:

**MR. EAKIN:** ... I have received the file from the District Attorney's Office. I have taken it to my office. I've not discussed the matter with Mr. Keefer, nor his Assistant or members of his staff.

The decisions that I have made to this point have been without consultation and I propose to continue stewardship of the case in that fashion. I have independently reviewed the witnesses.

*Id.* at 6.

At the hearing on the Renewed Motion to Disqualify, the only testimony was that of Mr. Eakin. In response to the averments concerning the issuance of subpoenas and the use of Mr. Keefer's office staff, Mr. Eakin testified as follows:

**MR. EAKIN:** The procedure used, Your Honor, was that I advised Joan in the District Attorney's Office which witnesses I wanted. They prepared, actually did the typing of subpoenas and passed them to the appropriate officer for service. Additionally, last week I understand there was a request from the officer for several subpoenas while I was out of town, which again was prepared by the secretary in there and given back to the officer for service. As far as consultation with Mr. Keefer or Miss Duval concerning which witnesses were to be subpoenaed, there were none. In fact, I have not discussed the case with either of them

492

other than request for some procedural guidance on local custom.

N.T., March 8, 1993, at 3–4.

On the first motion, the distinguished trial judge had before him nothing other than the factual averments that Mr. Keefer had disqualified himself and had appointed Mr. Eakin to try the case. In addition, Judge Spicer had the representation of defense counsel that he was not urging any actual prejudice as well as the statements of Mr. Eakin that he had not contacted Mr. Keefer during his handling of the prosecution. That motion was denied. On the Renewed Motion, Judge Spicer had before him the additional facts that the trial notices had been sent from Mr. Keefer's office, that Mr. Keefer's office had issued subpoenas for the prosecution, and that the Adams County D.A.'s facilities were being used for witness interviews. The two exhibits attached to the Renewed Motion were (1) a one-sentence notice on the letterhead of the Office of the District Attorney of Adams County, listing the Breighner case for trial on January 11, 1993, and (2) a letter on the letterhead of J. Michael Eakin, District Attorney, Cumberland County, addressed to Martha Duvall, an Adams County Assistant D.A., confirming that the case would be ready for trial the week of March 8, 1993, and requesting the re-issuance of subpoenas "for the same people as before." A copy of the letter is shown as going to counsel for the defendant, Mr. Wilcox.

In addition, on the Renewed Motion, Judge Spicer had the uncontradicted testimony of Mr. Eakin as to precisely how he had been handling his request for subpoenas and office support. N.T. March 8, 1993, at 3–4. The defendant did not offer any other evidence to support her motion. On these facts, I am unable to conclude that Judge Spicer abused his discretion in denying both the original motion and the renewed motion.

Because there has been no abuse of discretion at the time the orders were entered by the trial court, this Court should be compelled to reject the contention concerning alleged error

by the trial court and, on this issue, affirm the judgment of sentence.

It is unfortunate that Roy Keefer chose to disqualify himself from prosecuting this action rather than requesting that his law firm refuse to represent the decedent's estate in the lucrative civil case associated with the accident. *Commonwealth v. Eskridge, supra,* (Cappy, J., concurring). Nevertheless, once the conflict of interest became apparent, Keefer appointed J. Michael Eakin to assume the prosecutor's role. The Majority holds that the conflicted district attorney cannot make *any* decisions regarding a prosecution once a conflict has arisen, including the delegation of the prosecutor's duties to a selected third party. In my view, this is an inappropriate extension of *Commonwealth v. Eskridge,* 529 Pa. 387, 604 A.2d 700 (1992).

In *Eskridge,* the conflicted District Attorney delegated the prosecution of the defendant to one of his assistants, an attorney from the same office. The Majority correctly notes that *Eskridge* holds that, when a conflict exists, prosecution by that District Attorney *or any other attorney in his office* is barred because of the supervision and control that is maintained by the conflicted District Attorney. Majority op. at 482–83. The court stated that, "when an actual conflict of interest affecting the prosecutor exists in the case[,] ... a defendant need not prove actual prejudice[.]" *Eskridge, supra,* at 392, 604 A.2d at 702. In my view, the establishment of supervision and control exercised by the conflicted district attorney is crucial.

Here, the prosecution was entrusted to an attorney not in the office down the hall, but from the next county. The file was sent to Cumberland County and was not worked upon by any attorney in the Adams County District Attorney's Office. Although the Majority purports to find examples of the supervision and control of this prosecution by Adams County, these are actually examples only of secretarial support and the general inquiry into the local practice and customs of Adams County. Such assistance would also be extended to an attorney from the Attorney General's Office. As for attorney

Eakin's discussions with the victim's attorney in the civil action, any good prosecutor would undertake an investigation into the facts of his case. Once again, I fail to see how the Attorney General's Office would have handled this aspect of the case differently, and I cannot conclude that this evinces supervision and control being exercised by Adams County.

The Majority emphasizes the fact that attorney (now Judge) Eakin was appointed assistant district attorney for Adams County before he prosecuted this case and concluded that he was thus technically under the supervision and control of the conflicted attorney. The Majority asserts that the Attorney General's office, on the other hand, already had jurisdiction to prosecute pursuant to 71 P.S. § 732–205(a)(3), making such appointment unnecessary if the action were prosecuted by that office. The Commonwealth Attorney's Act, however, does not independently confer jurisdiction upon the Attorney General, but instead merely provides that the Attorney General shall have the power to prosecute *when requested to do so* by a District Attorney who is experiencing a conflict. *Accord Commonwealth v. Imler,* 42 D. & C.3d 66 (1984) (holding that the Commonwealth Attorney's Act awarding the Attorney General's Office the power to prosecute in cases where the District Attorney experiences a conflict does not require an automatic intervention in every matter involving a conflict, but authorizes prosecution only at the district attorney's request). Thus, the District Attorney must affirmatively confer the jurisdiction to prosecute whether the Attorney General or a District Attorney from a neighboring county is involved. I fail to see how a request to the Attorney General differs materially from a request to District Attorney Eakin when compliance is optional in both cases and the requested action is identical.

Moreover, under Section 205(d) of the Commonwealth Attorney's Act, 71 P.S. § 732–205(d), the Attorney General may employ such special deputies as are necessary for the prosecution of a criminal action. As Mr. Eakin pointed out to Judge Spicer at the hearing on December 23, 1992, he could have been appointed by the Attorney General to handle the case as a special deputy attorney general and nothing would have

changed as far as the manner in which the case would be handled. N.T., December 23, 1992 at 7. The Majority concedes that the record does not support a finding that Breighner was prejudiced in any way by Eakin's handling of the case. When questioned by the trial court, Eakin "repeatedly assured the court that he was exercising independent judgment and discretion." Trial Court Opinion on Post–Verdict Motions, filed May 4, 1993, at 2. In that court's estimation,

> no reasonable member of the public would conclude that Mr. Eakin's representation was blemished with ulterior motives. His conduct during trial was low-keyed and reasonable. He employed no histrionics, nor did he appeal to the emotion of the jury. His conduct carried absolutely no suggestion that he sought a conviction to benefit a private tort action.

Trial Court Opinion on Expanded Post–Verdict Motions, dated November 3, 1994, at 4.

Because it has not been established that the conflicted District Attorney exercised any supervision and control over District Attorney Eakin, I conclude that any conflict ceased to exist once Eakin assumed the prosecutor's role. I agree with the esteemed Chief Justice Nix who, in writing for the dissent in *Eskridge,* found that "it would be an elevation of form over substance" to remove the requirement of actual prejudice in cases of this type. *Eskridge, supra,* at 393, 604 A.2d at 703. Absent the assertion of actual prejudice, which cannot be proven here, a new trial is not warranted.

The policy behind the *Eskridge* decision is sound; a criminal defendant has the right to have his case reviewed by an administrator of justice who seeks to serve the public good, not by a zealous advocate who is seeking to convict at all costs to ensure a large civil verdict and a similarly large fee. Where, however, there is no evidence that the prosecutor was in any way influenced by improper considerations, either directly or through supervision and control by one suffering a conflict of interest, this policy is not advanced. Mr. Eakin, an independently elected District Attorney from a county with a population two-and-one-half times the size of the county which sought his services in a prosecution, could have been appoint-

ed either by the Adams County District Attorney under 16 P.S. § 1420 or by the Attorney General under 71 Pa.C.S. § 732–205(d). What public policy is being advanced by this Court's interference with the Pennsylvania Supreme Court's exclusive right to supervise the conduct of all officers of the judicial branch of government? The *per se* rule declared by the Majority is both beyond our power as an error-correcting court and misguided. Accordingly, I would hold that Breighner's judgment of sentence must be upheld. Hence this dissent.

TAMILIA, Judge, dissenting.

I respectfully dissent. I am in agreement with Judge Johnson in his dissent to the extent that a per se rule should not be pronounced by this Court in circumscribing the power of a district attorney to assign a case to a neighboring district attorney when he perceives a conflict in prosecuting a case. The possibility of conflict in a small county district attorney's domain is vastly greater than in metropolitan districts. The freedom to call upon neighboring district attorneys substantially increases the efficiency of all law enforcement processes in those matters, whether it be due to the prosecution of a relative, colleague or friend of the district attorney with primary jurisdiction or because, as here, of a financial conflict in taking a civil case related to the criminal case being prosecuted. The true issue, which is not a matter for consideration by this Court, is whether the law firm should have accepted a case in which a member, as district attorney, is the prosecutor.

Having divested himself of jurisdiction, it is inappropriate, unless evidence so indicates, to presume a conspiratorial arrangement or hidden control of the prosecution by the district attorney of Adams County vis a vis the district attorney of Cumberland County. It is absolutely clear that J. Michael Eakin, then District Attorney of Cumberland County, but since elected to this Court, conducted the investigation and trial of this case in a totally independent fashion and that the evidence and law clearly warranted a conviction.

It is improper for this Court to gratuitously assign impropriety or the appearance of impropriety, where none exists, or to posit a new rule of conduct on the operation of district attorney's offices when none is justified. I would affirm the judgment of sentence.