J-A26007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KWANE CUFF, | |
| Appellant | No. 2160 MDA 2013 |

Appeal from the Judgment of Sentence October 15, 2013
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001389-2013

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 10, 2014**

Kwane Cuff appeals from the judgment of sentence of twelve months probation imposed by the trial court after a jury found him guilty of resisting arrest and disorderly conduct.  After careful review, we reverse.

Officer James Hawkins of the Harrisburg police was on routine patrol with his canine partner at 3:30 a.m. on February 15, 2013, when he received a call from another officer reporting approximately ten shots fired in a high crime area with numerous drug-related shootings.  An additional citizen reported hearing shots fired in the area.  Officer Anthony Fiore heard the same calls.  Neither the citizen nor the officer who originally reported the shots could give a description of the shooter or shooters because they did not see the incident.  Both Officer Hawkins and Officer Fiore responded to the general vicinity.  When Officer Fiore arrived, he heard additional shots.

Officer Hawkins observed a vehicle legally parked with its dome light on and radioed Officer Fiore that he was going to check the vehicle to determine if it was related to the call of shots fired. The two officers then traveled together in their own vehicles toward the car.

As Officer Hawkins approached, he saw Appellant standing outside of the car and another individual in the passenger seat. Officer Hawkins activated his high beams and illuminated the vehicle with his spotlights. At that point, he believed the person inside the car was an individual whom he knew had been convicted of several firearms violations.[1] The person inside the car then exited and, according to Officer Hawkins, both men "started to step away in the opposite direction where [he] was parked in front of their vehicle." N.T., 10/15/13, at 45. According to Officer Hawkins, "one or two" steps were taken away from the officer's direction. *Id*.

Officer Hawkins exited his car with his canine and ordered the men not to run and instructed them that they were not free to leave. Officer Fiore alighted from his car with his weapon drawn and directed the men to move to the front of their vehicle. Officer Fiore detained the passenger who originally was inside the car. The officer placed that man in handcuffs and performed a pat-down search. Officer Fiore did not recover anything from

---

[1] This initial belief proved to be incorrect.

him. As Officer Fiore sat the person down, Appellant began to loudly swear at Officer Hawkins and demand that he get the dog away from him.

Officer Fiore asked Appellant to cease yelling. Appellant refused, and Officer Fiore attempted to inform Appellant that he was going to frisk Appellant for officer safety. Appellant continued to scream at the officers and as Officer Fiore tried to frisk him, Appellant "tensed up his upper body and he pulled away from [Officer Fiore's] grasp and then started to turn." *Id*. at 64. Officer Fiore took Appellant to the ground. There was a "brief struggle" which "didn't last very long at all" before Officer Fiore placed him in handcuffs and under arrest. *Id*. at 65. Appellant continued his profanity-laced tirade and threatened to sue the officers. As a result, several individuals exited a house, which was Appellant's residence, and also became involved in the verbal altercation. No contraband or weapons were found on Appellant and police did not search the vehicle.

The Commonwealth charged Appellant with disorderly conduct and resisting arrest. Appellant filed a pre-trial *habeas corpus* motion and a motion to suppress. The court denied those motions and the matter proceeded to a jury trial. The jury found Appellant guilty of the aforementioned charges. The court sentenced Appellant to two concurrent terms of twelve months probation. This timely appeal ensued. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court

authored its opinion. The matter is now ready for our review. Appellant presents four issues for this Court's consideration.

I.     Whether the trial court erred in instructing the jury to consider elements of the crime of disorderly conduct for which Appellant was not charged?

II.    Whether the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that Appellant committed the crime of disorderly conduct where:

A) the Commonwealth failed to prove that Appellant acted with the intent to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof, and

B) the Commonwealth failed to prove that Appellant created a hazardous or physically offensive condition by an act which serves no legitimate purpose?

III.   Whether the evidence at trial was insufficient to prove that Appellant committed the crime of resisting arrest where the Commonwealth failed to prove beyond a reasonable doubt:

A)    that Appellant created a substantial risk of bodily injury or resisted arrest by means justifying or requiring substantial force to overcome his resistance; and

B) that there was an underlying lawful arrest?

IV.    Whether the trial court erred in denying Appellant's [m]otion to [s]uppress where Appellant was illegally detained without probable cause or reasonable suspicion in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution?

Appellant's brief at 7-8.

At the outset, we address Appellant's sufficiency of the evidence arguments since a successful sufficiency challenge warrants discharge rather than a new trial. **Commonwealth v. Torrito**, 67 A.3d 29, 33 (Pa.Super. 2013) (*en banc*); **Commonwealth v. Breighner**, 684 A.2d 143 (Pa.Super. 1996) (*en banc*). Appellant's initial sufficiency claim relates to his disorderly conduct conviction. We view all of the evidence admitted, even improperly admitted evidence, in conducting a sufficiency review. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. **Id**. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. **Id**.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Id**. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id**.

The Commonwealth charged Appellant with disorderly conduct under 18 Pa.C.S. § 5503(a)(4). That provision provides,

> **(a)  Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4). In addition, where the defendant acts with the intent "to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist[,] the offense is graded as a misdemeanor of the third degree. 18 Pa.C.S. § 5503(b). Here, the Commonwealth charged Appellant with the third-degree misdemeanor offense. The statute also defines the term "public." Pursuant to 18 Pa.C.S. § 5503(c), "the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public."

Appellant acknowledges that the Commonwealth's evidence established that he cursed and threatened to sue police. However, he maintains that, "[t]here was no evidence that any members of the public were around to witness the incident or that Appellant's apparent yelling created a public disturbance or inconvenience." Appellant's brief at 22-23. Appellant continues that there were only four houses on the street, which

was a dead-end street, and the members of his own family did not exit the house until after police arrested him.

Appellant also submits that the Commonwealth did not prove that his actions created a hazardous or physically offensive condition. Appellant recognizes that the phrase "physically offensive condition" includes setting off a stink bomb, strewing rotten garbage in public, shining blinding lights into the eyes of the public, and invading the physical privacy of an individual. *See Commonwealth v. Williams*, 574 A.2d 1161 (Pa.Super. 1990). Nonetheless, he contends that his swearing at police, and arguing about being handcuffed and searched did not create a physically offensive condition.

The Commonwealth rejoins that Appellant's verbal tirade at 3:30 a.m. in a residential area caused a public disturbance. It argues further that Appellant's actions "put the officers in jeopardy by further charging an already tense situation, raised awareness that police were in the area, and brought more people out into a potentially harmful situation as the officers were conducting an investigation of a gun being fired in the area." Commonwealth's brief at 20.

Viewing the evidence in a light most favorable to the Commonwealth, we find that the Commonwealth established that Appellant intended to cause public annoyance or alarm and recklessly created a risk of such annoyance or alarm. At 3:30 a.m., Appellant, on a public street, repeatedly began to

loudly swear and verbally abuse police despite repeated attempts to calm him down. It is a reasonable inference from the record that Appellant intended to draw public attention to both himself and the police, thereby causing public alarm by screaming profusely at the police during the early morning hours of the day. In doing so, Appellant's actions created a hazardous condition since the officers were investigating a report of multiple shots fired. Here, Appellant's yelling may have alerted the culprits of the shots fired to the presence of police, endangering both the police and the community. *See Williams*, *supra* at 1164 ("A 'hazardous condition' is a condition that involves danger or risk."). Further, it prevented the police from continuing their investigation into the shooting. Accordingly, we hold that Appellant's disorderly conduct sufficiency claim does not entitle him to relief.

Appellant also challenges the sufficiency of the evidence relative to his resisting arrest conviction. To be found guilty of resisting arrest, the Commonwealth must prove that the individual, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to

overcome the resistance." 18 Pa.C.S. § 5104.[2] Running away, arguing with, or minor scuffling with police is insufficient. *See Commonwealth v. Miller*, 475 A.2d 145 (Pa.Super. 1984) (fleeing from police alone is not resisting arrest, flight must expose officers to substantial danger); Comment to 18 Pa.C.S. § 5104 ("This section changes existing law somewhat by not

_____

[2] Under modern Pennsylvania law, one has no right to resist arrest, even if the arrest is unlawful. *See Commonwealth v. Biagini*, 655 A.2d 492 (Pa. 1995); 18 Pa.C.S. § 505(b)(1)(i). This was a change in the common law that dated to the early days of the American republic. *See* Andrew P. Wright, *Resisting Unlawful Arrests: Inviting Anarchy or Protecting Individual Freedom?*, 46 Drake L.Rev. 383 (1997). The United States Supreme Court in *John Bad Elk v. U.S.*, 177 U.S. 529, 535, (1900), outlined that at common law, "If the officer had no right to arrest, the other party might resist the illegal attempt to arrest him, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest." The United States Supreme Court also recognized in *Wolf v. Colorado*, 338 U.S. 25 (1949), *overruled in part on other ground*, *Mapp v. Ohio*, 367 U.S. 643 (1961), that "One may also without liability use force to resist an unlawful search." *Wolf*, *supra* at 33 n.1 (citing *Commonwealth v. Martin*, 105 Mass. 178 (1870); *State v. Mann*, 27 N.C. 45 (1844)); *cf. State v. Curtis*, 2 N.C. 471 (1797) ("as the officer did not tell *Curtis* for what he arrested him, and the warrant he had was not under seal, *Curtis* who resisted, and beat him for making the arrest, was acquitted."); *Coyle v. Hurtin*, 10 John 85 (N.Y. 1813); *State v. Worley*, 33 N.C. 242, 243 (1850) ("a seal is essential to every warrant, issued by a magistrate to arrest any person upon a criminal charge. If there be no seal, the precept is void and affords no protection to the officer attempting to execute it; and, if its execution is resisted by the defendant, he is guilty of no offence against the law, though, in doing so, the person of the officer be assaulted."); *State v. Crocker*, 1874 Del. LEXIS 16.

extending to minor scuffling which occasionally takes place during an arrest."); ***Commonwealth v. Rainey***, 426 A.2d 1148 (Pa.Super. 1981).[3]

Appellant first asserts that he did not create a substantial risk of bodily injury or resist by means justifying or requiring substantial force against him. In this respect, he highlights that Officer Fiore testified that Appellant tensed his upper body, pulled away from the officer, and started to turn away from Officer Fiore. Further, he points out that although a "brief struggle" occurred on the ground, Officer Fiore handcuffed Appellant without assistance. Appellant maintains that this minor scuffle does not rise to resisting arrest. In support, he relies on ***Rainey***, ***supra***.

In ***Rainey***, an inebriated Rainey believed he had entered his friend's apartment and used the bathroom therein. However, his friend had moved

---

[3] We are cognizant that the jury was instructed that running away, arguing with police, and minor scuffling with police is not resisting arrest. We add that the resisting arrest statute is "derived from" the Model Penal Code. Comment to 18 Pa.C.S. § 5104. The comment to the Model Penal Code provision reads in relevant part,

> This provision covers a person who, for the purpose of preventing a lawful arrest, "creates a substantial risk of bodily injury" or "employs means justifying or requiring substantial force to overcome the resistance." This language exempts from liability nonviolent refusal to submit to arrest and such minor acts of resistance as running from a policeman or **trying to shake free of his grasp**. The policy judgment underlying this curtailment of coverage is that authorizing criminal punishment for every trivial act of resistance would invite abusive prosecution.

Comment to Model Penal Code § 242.2 (emphasis added).

- 10 -

and no longer resided at the apartment. Rainey then passed out on the floor of the apartment. The resident of the apartment above telephoned police after hearing the toilet flush. Police responded and awakened Rainey to place him under arrest. Rainey attempted to leave but was restrained by the officer. A second officer then entered the apartment and placed Rainey against a wall and frisked him. That officer then transported the appellant to a police van. Upon reaching the police vehicle, Rainey attempted to flee. The officer grabbed the appellant and he "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp." *Rainey*, *supra* at 1149.

A third officer arrived and struck *Rainey* in the head with a nightstick. Rainey continued to struggle, and one officer began to choke Rainey in an attempt to subdue him, but relented when Rainey could not breathe. The original officer who responded, and who had been interviewing the person who called police, returned to aid his fellow officers. The three officers were then able to handcuff Rainey. At trial, the testimony was that Rainey "merely attempted to squirm, wiggle, twist and shake his way free of their grasp." *Id*. This Court found insufficient evidence to find Rainey guilty of resisting arrest.

In Appellant's view, his actions were not as "violent or resistive as the actions of the defendant in *Rainey*." Appellant's brief at 30. Appellant adds that there was no proof of an underlying lawful arrest. He correctly notes

that Officer Fiore testified that he did not inform Appellant that he was under arrest and that the officer's initial attempt at handcuffing Appellant was not to place him under arrest, but was for purposes of a *Terry* frisk. According to Appellant, he was only placed under arrest after he struggled with the officer. Since the officer was not putting Appellant under arrest for disorderly conduct at the time he resisted, Appellant contends that his resisting arrest conviction is improper. Lastly, with respect to his resisting arrest charge, Appellant asserts that the officer did not have reasonable suspicion to conduct a *Terry* frisk or probable cause for the initial detention. Thus, the purpose for handcuffing him was not lawful and he could not be convicted of resisting arrest.

The Commonwealth counters, without discussion, that *Rainey* is distinguishable. It adds that *Rainey* "has little precedential value." Commonwealth's brief at 21. According to the Commonwealth, this Court's decisions in *Commonwealth v. Lyons*, 555 A.2d 920 (Pa.Super. 1989), and *Commonwealth v. Butler*, 512 A.2d 667 (Pa.Super. 1986), support the verdict. In *Lyons*, deputy sheriffs attempted to arrest the defendant. Lyons, in an attempt to elude capture, "ran into the middle of Lycoming Creek and attempted to swim downstream with the current." *Lyons*, *supra* at 925. The temperature of the creek was frigid and it "had a slippery streambed and a swift current." *Id*. Two deputy sheriffs pursued Lyons into the creek. One deputy sheriff, "after three unsuccessful attempts, managed

- 12 -

to get a grip of [Lyons] *who was kicking and struggling to get away.*" ***Id***. (italics in original). Two officers then secured Lyons, but he "went limp, pulled his feet underneath him, refused to walk, and became rigid." ***Id***. Thus, the sheriffs had to carry him.

This Court opined that resisting arrest "does not require serious bodily injury. Nor does it require actual injury to the arresting officer." ***Id***. The panel set forth that sufficient evidence of resisting arrest may exist where "the arrestee's actions created a substantial risk of bodily injury to the arresting officer." ***Id***. The ***Lyons*** Court held that Lyons' "struggle with the two deputies in the middle of a frigid stream with a rocky uneven bed was sufficient to meet that requirement." ***Id***. It added that the resisting arrest statute "includes the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome resistance.' [Lyons'] actions unquestionably fall within the ambit of this portion of the statute. It took four deputy sheriffs to finally subdue appellant. Substantial force was thus required to overcome appellant's resistance to the arrest."

In ***Butler***, the defendant snatched four gold chains from a woman's neck in broad daylight and knocked her to the ground. The victim's friend, who witnessed the robbery, screamed. A young man responded to the cry and gave chase. The victim and her friend then flagged down a police officer. The young male who chased Butler returned and informed the officer that the assailant was hiding behind a wall one block away. The

officer went to that area, cornered Butler, and instructed him not to move. Butler, however, punched the officer and attempted to flee. Several other officers had to subdue the defendant. The **Butler** Court reasoned that, because "it took the assistance of other officers to subdue [Butler,]" and the officer testified that he was punched, the Commonwealth presented sufficient evidence of resisting arrest.

We find that neither **Lyons** nor **Butler** is dispositive. In both cases, the defendant exercised more force and resistance. Further, in **Lyons**, there was no legitimate question as to the lawfulness of the arrest. Initially, we agree with Appellant that the evidence against him does not establish that he was being lawfully placed under arrest for disorderly conduct at the time Officer Fiore brought him to the ground. There is no testimony that Appellant was being arrested for disorderly conduct when he began to resist. Both Officer Fiore and Officer Hawkins testified that Appellant was subject to an investigative detention and Appellant was not being arrested for disorderly conduct. However, a person may also be convicted of resisting arrest if his or her conduct, with the intent of preventing an officer from discharging a duty, creates a substantial risk of bodily injury or resists to such a degree as to require substantial force to subdue the defendant.

The question necessarily arises as to whether the officers were discharging their duty in performing a **Terry** frisk and whether the statute requires that the frisk be lawful in order to trigger the resisting arrest

offense. We hold, consistent with the requirement of a lawful arrest, that an officer must be lawfully discharging the duty in question, which may include an investigative detention and *Terry* frisk. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa.Super. 2011) (where officer had reasonable suspicion to conduct an investigative detention the defendant's actions of struggling with the officer and striking him using his left and right shoulders and cursing was sufficient evidence of resisting arrest); *Commonwealth v. Stevenson*, 894 A.2d 759, 775 (Pa.Super. 2006) (sufficient evidence to convict of resisting arrest where police had reasonable suspicion to detain individual exiting a convenience store and defendant pushed an officer while carrying a handgun and then resisted apprehension by violently struggling with an officer, mule-kicked the officer twice, and attempted to retrieve his own weapon); *Commonwealth v. Jackson*, 907 A.2d 540, 546 (Pa.Super. 2006) (defendant kicked officer during lawful investigative detention); *Commonwealth v. Maxon*, 798 A.2d 761 (Pa.Super. 2002) (absence of reasonable suspicion for investigative detention rendered evidence insufficient for resisting arrest conviction).

An investigative detention subjects an individual to a stop and short period of detention. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. *Id*. To conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Id*.

"[T]his standard is met 'if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.'" ***Commonwealth v. Kearney***, 601 A.2d 346, 348 (Pa.Super. 1992). It is well-settled that "[m]ere presence near a high crime area or in the vicinity of a recently reported crime, is not enough to warrant a ***Terry*** stop." ***Id***. Rather, police "must observe irregular behavior before he initiates a stop and, concurrently to his observation, he must hold a belief that criminal activity is afoot." ***Id***. We determine what level of interaction occurred under a totality of the circumstances test. ***Commonwealth v. Williams***, 73 A.3d 609, 615-616 (Pa.Super. 2013).

In the present case, police received a call of shots fired in a high crime area at 3:30 a.m. No description of the individual or individuals who fired the shots was provided. Upon responding to the area, police observed Appellant and another individual in a legally parked car with the dome light on. When the police approached, the two men took a step or two away from the car. This combination of facts is insufficient to support a reasonable and articulable belief that Appellant and his companion were engaged in criminal activity. Police did not observe irregular or suspicious behavior by Appellant. Thus, the initial investigative detention was unlawful and cannot support the resisting arrest charge. ***Cf***. ***Maxon***, ***supra***.

Even assuming *arguendo* that the totality of the circumstances warranted the initial detention for a ***Terry*** frisk, we find that Appellant did not create a substantial risk of bodily injury or resist by means justifying or requiring substantial force to subdue him. Instantly, Appellant stiffened his upper body, and stepped and turned away from the officer. None of these actions rises to the level of creating a substantial risk of bodily injury. ***See Commonwealth v. Eberhardt***, 450 A.2d 651 (Pa.Super. 1982). Further, they did not require or justify substantial force to overcome them. Of course, Appellant also "briefly struggled" with Officer Fiore after the officer took him to the ground. ***See*** N.T., 10/15/13, at 65. Probable cause for a lawful arrest may arise after an initial unlawful arrest, or in this case, an invalid investigatory detention. ***Cf. Commonwealth v. Jackson***, 924 A.2d 618 (Pa. 2007).

In ***Jackson***, 924 A.2d 618, a police officer saw Jackson with a group of men throwing dice on the street. Believing that the men were engaged in illegal gambling, the officer approached. Jackson fled, and the officer pursued. The officer caught Jackson, but Jackson punched him in the face and chest several times and eluded capture. However, the officer again was able to catch Jackson. Jackson kneed the officer in the groin, causing the officer to go to the ground. Jackson then attempted to wrestle the officer's gun away from him. The officer, nonetheless, succeeded in overpowering Jackson and placed him under arrest.

On appeal to this Court, Jackson challenged his resisting arrest conviction and a charge not relevant hereto. This Court reversed his resisting arrest conviction on the ground that there was no lawful arrest. Our Supreme Court granted allowance of appeal to determine whether "a defendant's assault on a police officer [which] occurs as the result of the officer's attempt to unlawfully arrest him, . . . may give rise to a lawful arrest, the resistance of which will support a charge of resisting arrest under 18 Pa.C.S. § 5104." *Id*. at 619–620. The High Court ruled that once Jackson first attacked the officer, the officer had probable cause to arrest him for aggravated assault and that Jackson's continued fighting constituted resisting arrest. The Supreme Court's *Jackson* decision is distinguishable since it involved more violent actions and comprised a scenario where the defendant resisted the officer's attempts to arrest him during multiple encounters. Simply put, in *Jackson*, 924 A.2d 618, there was unquestionably probable cause to arrest the defendant for aggravated assault after the original significant scuffle, and the defendant continued to violently resist.

While we agree that Officer Fiore was justified in using the amount of force he did, the facts viewed in a light most favorable to the Commonwealth establish only that a minor scuffle with Officer Fiore occurred. *See Rainey*, *supra*. This case is wholly dissimilar from the cases relied on by the Commonwealth, *Lyons* and *Butler*.

We recognize that the resisting arrest statute "does not require the aggressive use of force such as striking or kicking of the officer." **Miller**, **supra** at 146; **Commonwealth v. McDonald**, 17 A.3d 1282, 1285 (Pa.Super. 2011) (quoting **Miller**, **supra**). However, it does mandate that the forcible resistance used by the defendant involve some substantial danger to the officer. **Miller**, **supra** at 146. In this case, there is no testimony that Appellant punched, struck, kicked, spit upon, shoved, used his shoulders to strike, or used an amount of force justifying or requiring **substantial force** to place him in handcuffs. **Compare Commonwealth v. Franklin**, 69 A.3d 719 (Pa.Super. 2013) (defendant's swinging of his fists at police and continually yanking his arms away from officer constituted violent and tumultuous behavior); **McDonald**, **supra** (resistance by defendant required deployment of taser); **Commonwealth v. Thompson**, 922 A.2d 926 (Pa.Super. 2007) (couples' interlocking of arms and legs on the ground to prevent handcuffing required substantial force to pull them apart leaving officer exhausted); **Stevenson**, **supra** at 775 (defendant pushed officer, violently struggled with the officer, and mule-kicked him twice); **Jackson**, 907 A.2d at 546 (defendant kicked officer); **Lyons**, **supra** (defendant kicked and struggled in freezing cold creek with deputy sheriffs requiring two sheriffs to subdue him); **Commonwealth v. Guerrisi**, 443 A.2d 818 (Pa.Super. 1982) (defendant struck officer in the groin); **Miller**, **supra** at 147 (defendant was "attacking police[,]" flailed his arms and upper part of

his body in a rapid fashion, "push[ed] through" an officer, strained and struggled against the police and bruised an officer's leg). In short, we conclude that Appellant's actions did not justify or require substantial force to overcome his limited resistance. Accordingly, the Commonwealth failed to prove that Appellant statutorily resisted arrest, and he is entitled to discharge on that count.

Having addressed Appellant's sufficiency claims, we now examine his first issue. Appellant contends, and we agree, that the trial court erred in instructing the jury as to elements of disorderly conduct for which Appellant was not charged. In the present case, the Commonwealth only charged Appellant under 18 Pa.C.S. § 5503(a)(4). Nevertheless, the court issued a standard jury instruction that included elements of disorderly conduct with which Appellant was not charged.

Specifically, the trial court instructed the jury that it could find Appellant guilty of disorderly conduct if it found that:

> The defendant committed one of the following acts: That he either engaged in fighting or threatening or in violent or tumultuous behavior. Such conduct included actions and words that are directed at producing or inciting imminent lawless action, or an immediate violent response given the circumstances under which it occurred, or that the defendant made unreasonable noise.

> You must consider the circumstances in which the Defendant is alleged to have made the noise in question to determine if it was outside conventional standards of organized society.

Then secondly, ladies and gentlemen, that the defendant did so, did one of those actions, with the intent to cause public inconvenience, annoyance or alarm, or by his actions recklessly created a risk of public inconvenience, annoyance or alarm, and that he persisted in such disorderly conduct after reason warning or request to desist.

The word public, as I have used it, means affecting or likely to affect persons in a place in which the public or substantial group has access.

N.T., 10/15/13, at 98-99. Critically, Appellant was not charged with disorderly conduct under the sections related to engaging in fighting or threatening or violent or tumultuous behavior. *See* Criminal Information, Second Count, 6/13/13 (Appellant "did, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, create a hazardous or physically offensive condition by any act which serves no legitimate purpose of the defendant. The defendant acted with the intent to cause substantial harm or serious inconvenience or did persist in his conduct after reasonable warning or request to desist."); *see also* 18 Pa.Crim.P. 5503(a)(1). Moreover, the Commonwealth did not charge Appellant with violating the provision of the disorderly conduct statute relative to noise. *See* 18 Pa.C.S. § 5503(a)(2). Rather, the criminal information in this matter pertained only to the aspect of the disorderly conduct statute relative to creating a hazardous or physically offensive condition. 18 Pa.C.S. § 5503(a)(4).

The Commonwealth's argument that the court issued a standard jury instruction is a *non-sequitur*. A court may issue a standard jury instruction,

- 21 -

but if it instructs a jury on crimes or elements not charged, it is error unless the crime for which the defendant is convicted is a lesser-included offense. *Cf. Commonwealth v. Gouse*, 429 A.2d 1129 (Pa.Super. 1981); *compare also Commonwealth v. Shamsud-Din*, 995 A.2d 1224 (Pa.Super. 2010). Here, we do not find that the disorderly conduct provision in question is a lesser-included offense of the other disorderly conduct charges since the elements of the differing disorderly conduct provisions are distinct. *Cf. Commonwealth v. Brandon*, 79 A.3d 1192 (Pa.Super. 2013). The court's instruction was legal error. Accordingly, we reverse Appellant's disorderly conduct conviction.

Since we have found that insufficient evidence was introduced to establish resisting arrest, and that a new trial is necessary as to the disorderly conduct count, we need not reach Appellant's final issue. We observe only that Appellant's final challenge is to a suppression ruling, and because there was nothing found on his person or in his car, there was nothing to suppress. While in the early days of the American republic one could be successfully discharged based on an illegal arrest via a *habeas corpus* motion, *see Commonwealth v. Alexander*, 6 Binn. 176 (Pa. 1813), one cannot suppress an illegal detention. *See Commonwealth v. Standen*, 675 A.2d 1273, 1276 (Pa.Super. 1996) ("A person is not a suppressible fruit and any illegality of detention cannot deprive the

government of the opportunity to prove guilt through the introduction of evidence wholly untainted by the police misconduct.").

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014