COMMONWEALTH of Pennsylvania, Appellee

v.

Brian K. LUTES, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

George Hagerty, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 1, 2001.
Filed Feb. 27, 2002.

---

Russell B. Korner, Masontown, for appellants.

Nancy Ann Duffield, Asst. Dist. Atty., Uniontown, for Com., appellee.

Before: HUDOCK, JOYCE, and LALLY–GREEN, JJ.

LALLY–GREEN, J.

¶ 1 Appellants, Brian K. Lutes and George Hagerty, appeal the judgments of sentence entered against them on February 23, 2001. We affirm.

¶ 2 The facts as found by the trial court are as follows:

> On April 13, 2000, Defendants, George Hagerty (hereinafter Hagerty) and Brian K. Lutes (hereinafter Lutes) allegedly confronted Fayette County Commissioner Sean M. Cavanaugh (hereinafter Cavanaugh), as he was entering in [sic] the Fayette County Courthouse from a commissioner's meeting at the Fayette County Public Service Building. Hagerty and Lutes allegedly physically and verbally berated Cavanaugh in a threatening manner.
>
> On June 16, 2000, Hagerty and Lutes were found guilty by District Magistrate Lawrence Blair of disorderly conduct and harassment. Hagerty and Lutes subsequently appealed the summary convictions for a trial *de novo* to this Court.
>
> In an opinion dated October 4, 2000, this Court denied Hagerty and Lutes' Omnibus Pretrial Motions to transfer prosecution to the Office of Attorney General and for rucusal [sic] of all members of this Court.
>
> On February 22, 2001, a trial *de novo* on the aforementioned charges against Hagerty and Lutes was held before this Court. This Court found Hagerty and Lutes guilty of harassment and disorderly conduct and sentenced Hagerty to pay a $150 fine for each offense and Lutes to pay a $300 fine for each offense.
>
> On March 16, 2001, Hagerty and Lutes filed a Notice of Appeal to the Superior Court of Pennsylvania.

Trial Court Opinion, 4/20/01, at 1–2.

¶ 3 Appellants raise nine issues in their Statement of Questions Presented.

I. Whether the Pre-trial/Trial Court committed error when it refused to grant appellants' "Motion to Transfer Prosecution by the Fayette County Office of District Attorney to the Commonwealth of Pennsylvania Office of Attorney General?"

II. Whether the Pre-trial/Trial Court committed error when it refused to grant appellants' "Motion for Recusal of All Members of the Fayette County Court of Common Pleas?"

III. Whether the Trial Court erred by refusing to grant appellants' "Motion to Dismiss Citations" (and ultimately the cases) herein because the Commonwealth failed to do an "on scene" investigation?

IV. Whether the Trial Court erred and ultimately prejudiced appellants' right to a fair trial by not ordering the Commonwealth to formally answer appellants' "Request for Pretrial Discovery and Inspection?"

V. Whether the Trial Court erred when it severely limited appellants' request to fully cross-examine the credibility of the following witnesses in the following areas?

(A) Appellants were not permitted to cross-examine Commonwealth witness Paul Wozniak regarding termination of his employment with the Sheriff's office of Fayette County.

(B) Appellants were not permitted to cross-examine Commonwealth witness Vince Vicites regarding statements made by him as to his feelings regarding the Appellants.

(C) Appellants were not permitted to call a female witness who would have testified that she was called a similar name by Commonwealth witness Sean Cavanagh that Cav-anagh maintains the Appellants called him; said testimony would have fallen under the ambit of "notorious facts."

(D) Appellants were not permitted to cross-examine Commonwealth witness Sean Cavanagh regarding whether he has called Commissioner Vicites or others similar names to those allegedly called him by the Appellants; said testimony would also have fallen under the ambit of "notorious facts."

(E) Appellants were not permitted to fully cross-examine Commonwealth witness Martin Griglak as to the reason(s) he no longer serves on the Highlands Hospital Board.

VI. Whether the evidence was insufficient to sustain the verdicts as the Commonwealth failed to prove beyond a reasonable doubt that the Appellants were guilty of harassment?

VII. Whether the evidence was insufficient to sustain the verdicts as the Commonwealth failed to prove beyond a reasonable doubt that the Appellants were guilty of disorderly conduct?

VIII. Whether the Trial Court erred when, at the close of the Commonwealth's case, and at the close of trial, it refused to grant appellants' request for dismissal of the disorderly conduct and harassment charges as being *de minimis* in nature?

IX. Whether the Trial Court abused it[s] discretion when it sentenced the appellants?

Appellants' Brief at 6–7.[1]

¶ 4 We turn to Appellants' first issue. Appellants assert that the trial court abused its discretion by refusing to transfer this case to the Attorney General's Office (AG's Office) for prosecution due to an alleged conflict of interest with the Fayette County District Attorney's Office (DA's Office) because the victim in this case was a county commissioner. Appellants allege that because county commissioners control the budget of the DA's Office, a conflict of interest existed which required the substitution of the AG's Office for the DA's Office.

■ ¶ 5 When reviewing a trial court's refusal to transfer the prosecution of a case to the AG's Office, we will accept the trial court's finding that there was no conflict of interest absent an abuse of discre-

tion. *Commonwealth v. Stafford,* 749 A.2d 489, 494 (Pa.Super.2000).

¶ 6 The Commonwealth Attorney Act, which governs the powers and duties of the AG's Office, states that:

(a) **Prosecutions.**—The Attorney General shall have the power to prosecute in any county criminal court the following cases:

(3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

. . .

(5) When the president judge in the district having jurisdiction of any

---

1. We note that Appellants' brief violates Pennsylvania Rule of Appellate Procedure 2116(a), which provides in pertinent part:

 **Rule 2116. Statement of Questions Involved**

 (a) **General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. **It should not ordinarily exceed 15 lines, must never exceed one page**, and must always be on a separate page, without any other matter appearing thereon. **This rule is to be considered in the highest degree mandatory, admitting of no exception**; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

 Pa.R.A.P. 2116(a) (emphasis added). It is within this Court's power to quash an appeal for violations of the Rules of Appellate Procedure. See, *Commonwealth v. Stafford,* 749 A.2d 489, 493 (Pa.Super.2000). Here, Appellants' Statement of Questions Involved exceeds forty (40) lines and is over one and one-half (1½) pages in length.

 As we have before in such a case, we turn Appellants' attention to the following quote:

 With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. . . . When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

 *Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1380 n. 1 (1995) (*quoting United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982)); *Commonwealth v. Hunter,* 768 A.2d 1136, 1139 (Pa.Super.2001).

 While we caution Appellants' counsel against such violations of the Pennsylvania Rules of Appellate Procedure, we will not quash the instant appeal since the brief is not so defective as to preclude effective appellate review.

criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. If the Attorney General agrees that the case is a proper one for intervention, he shall file a petition with the court and proceed as provided in paragraph (4). If the Attorney General determines that the case is not a proper case for intervention, he shall notify the president judge accordingly.

71 P.S. § 732–205(a)(3) and (5).

¶ 7 The budget of the DA's Office is controlled by 16 P.S. § 1401(g). Under this section, the county commissioners may determine if the county requires the services of a full-time district attorney. Once that determination is made, the section fixes the salary of the district attorney based on the class of the county and the salary of the common pleas court judge of the county. Under 16 P.S. § 1420(a), the district attorney may appoint assistants to help carry out the duties of the office of the district attorney. Also, under this section, the salary of such assistants is fixed by the salary board. 16 P.S. § 1420(a). The salary board is made up of the county commissioners and the county controller or, if there is no controller, the county treasurer. 16 P.S. § 1622.

■ ¶ 8 When the district attorney has a direct financial interest in the outcome of a prosecution, a conflict of interest exists which requires the substitution of the AG's Office and which is not cured by the assignment of the case to an assistant district attorney. *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700 (1992) (where the district attorney's private law firm could receive a direct financial gain from the defendant's prosecution, the conflict created was not cured by assigning the case to an assistant district attorney as he was still under the direction and control of the conflicted district attorney).

■ ¶ 9 A prosecutor can be disqualified for having a non-economic, personal interest in the outcome of the prosecution. *Commonwealth v. Balenger*, 704 A.2d 1385 (Pa.Super.1997) (PCRA court properly ordered a new trial because the assistant district attorney carried on a romantic relationship with the petitioner's girlfriend at the time of the trial and sought a conviction against the petitioner to remove the petitioner as a competitor for the woman's affections). This non-economic, personal interest is likewise a conflict of interest.

■ ¶ 10 A prosecutor's duties and loyalties lie with the Commonwealth and not with the victim of a criminal offense. *Commonwealth v. Price*, 454 Pa.Super. 88, 684 A.2d 640, 642 (1996) (where victim in one criminal case was arrested and charged as a defendant in another, unrelated criminal case, DA's office was not disqualified on the basis of a conflict of interest because the victim was just a witness in the first case and the "prosecutor's 'client' is the Commonwealth and the people who live in the Commonwealth").

■ ¶ 11 Our review of the record reflects that the trial court did not err in concluding that the DA's Office did not have a conflict of interest that required a transfer to the AG's Office. Unlike in *Eskridge*, the prosecutor here has no direct financial interest in the outcome of the case, especially since the legislature establishes the salary of the district attorney. Also, Appellants fail to demonstrate how the DA's Office's prosecution of Appellants for their criminal behavior towards the victim is causally related to the budget of

the DA's Office. The victim, a county commissioner, is one of many who vote on the budget for the DA's Office. Additionally, unlike in *Balenger*, neither the prosecutor individually nor the DA's Office generally has a personal stake in Appellants' trial. Also, as in *Price*, the prosecutor's interest is not in vindicating the rights of the victim, but in protecting the people from, and seeking punishment for, those who break the laws of this Commonwealth. Since the record fails to reflect any evidence that supports Appellants' allegation, the trial court did not abuse its discretion in finding that neither the DA's Office generally nor the prosecutor individually had a conflict of interest. This claim fails.

¶ 12 Appellants' second argument is that all the members of the Court of Common Pleas of Fayette County were ineligible to hear the case for a variety of reasons. Appellants merge this argument with that regarding the DA's Office. Without citing to a statute or relevant case law, Appellants allege that since the budget of the Court of Common Pleas of Fayette County is reviewed and approved by the county commissioners, recusal of all of the judges of that court is required.

 ¶ 13 Our standard of review for recusal is well established:

It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which rais-

es a substantial doubt as to the jurist's ability to preside impartially ... In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998).

 ¶ 14 Here, the record simply fails to contain any evidence and Appellants do not cite any case law supporting their allegation that all members of the Court of Common Pleas of Fayette County should recuse themselves.[2] Appellants have failed to produce any evidence establishing bias, prejudice or unfairness, which raises a substantial doubt as to each jurist's ability to preside impartially.[3] Specifically, Ap-

---

2. Appellants point us to *Eskridge, supra* and *Commonwealth v. Breighner*, 453 Pa.Super. 477, 684 A.2d 143 (1996). Both *Eskridge* and *Breighner* hold that once a conflict of interest arises in the district attorney's office relative to a prosecution, it is improper for the conflicted district attorney to engage in any decision-making in the case, including choosing who will handle the prosecution. *See, Eskridge*, 604 A.2d at 701 and *Breighner*, 684 A.2d at 147. These cases do not support Appellants' argument that all members of the Fayette County Court of Common Pleas should have recused themselves.

3. Appellants argue that the trial court was biased, prejudiced or unfair towards Appellants. Appellants contend that "all members of this Honorable Court [the Court of Common Pleas of Fayette County] know them and who they are, what statements or criticisms that have been made and about whom and *perhaps*, have formed their own opinions of the Appellants." Appellants' Brief at 13 (emphasis added). Yet, the record is devoid of any evidence to support this bald claim. Thus, since Appellants fail to demonstrate an abuse of discretion, this claim fails.

pellants have failed to demonstrate that when the victim of a crime is a county commissioner, who has one vote on a budget for the court, the common pleas court cannot be impartial and fair in judging the guilt or innocence of the persons charged with the crime. The trial court did not abuse its discretion in denying the motion to recuse.

¶ 15 Next, Appellants argue that the citations issued to them should be dismissed because the police did not do an "on-scene" investigation and, thus, did not witness the event. Appellants allege that the proper method of instituting action against them was a private criminal complaint filed by the victim. Appellants claim that the filing of the citation "after" the investigation was a defect that caused them prejudice.

¶ 16 Where the trial court has heard a case *de novo*, our standard of review requires that we determine whether the findings of fact are supported by competent evidence or any error of law has occurred. *Commonwealth v. Gussey*, 319 Pa.Super. 398, 466 A.2d 219, 221 (1983). The relevant rules are as follows. Pa.R.Crim.P 400 provides:

Criminal proceedings in summary cases shall be instituted either by:

(1) issuing a citation to the defendant; or

(2) filing a citation; or

(3) filing a complaint; or

(4) arresting without a warrant when arrest is specifically authorized by law.

Pa.R.Crim.P. 400. (Previously Pa. R.Crim.P. 51). Pa.R.Crim.P. 410 contemplates the filing of citation following an investigation:

When it is not feasible to issue the citation to the defendant or when evidence is discovered after the issuance of a citation that gives rise to additional summary charges against the defendant resulting from the same incident, a law enforcement officer shall institute a criminal proceeding in a summary case by filing a citation with the proper issuing authority.

Pa.R.Crim.P. 410. (Previously Pa. R.Crim.P. 60). *See also*, Pa.R.Crim.P. 109, which provides:

**Defects in Form, Content, or Procedure**

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case of before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

**Comment**

This rule clarifies when a defendant should be discharged or a case dismissed because of a defect; it eliminates disputes as to what is an informal defect or a substantive defect. As a condition of relief regardless of whether the defect is in form, content, or procedure, the court or issuing authority must determine that there is actual prejudice to the rights of the defendant.

Pa.R.Crim.P. 109. (Previously Pa. R.Crim.P. 90).

¶ 17 Appellants fail to demonstrate any defect. The Rule does not require that a victim file a private complaint if the officer fails to issue a citation at the scene. Rather, the Rule contemplates what actually happened here, *i.e.*, the issuance of a citation following an investigation. *See*, Pa.R.Crim.P. 410.

¶ 18 Our review of the record reflects that Detective Jones, who investigated the incident and subsequently filed the citations, testified that he interviewed the victim and witnesses, Mr. Vicites and Mr. Griglak. He further received a written statement from, and interviewed, Lieutenant Paul Wozniak, who intervened in the incident. Detective Jones also testified that he contacted Appellant Hagerty by telephone and that Appellant Hagerty refused to give him a statement. Detective Jones attempted several times but failed to contact Appellant Lutes. Contrary to Appellants' contention, there is no requirement that the investigating officer speak with each and every person who was present at the time of an offense. Here, the record reveals that Detective Jones spoke with the individuals who possessed firsthand knowledge about, and who were participants in, the incident. Appellants fail to demonstrate that the process of the investigation and the subsequent issuance of a citation constituted any defect.

¶ 19 Assuming arguendo that Appellants demonstrated a defect, Appellants fail to prove that actual prejudice resulted from the alleged defect in the filing of the citations. The mere existence of a defect in the procedure of initiating the summary case against a defendant does not in and of itself establish actual prejudice. *Commonwealth v. Glassman,* 359 Pa.Super. 230, 518 A.2d 865 (1986).

¶ 20 Appellants allege that they were prejudiced because they "lost" potential witnesses who would have testified favorably for them. Our review of the record reveals no proffer by Appellants as to what these potential witnesses would testify to or, indeed, what they observed that would have assisted Appellants in their case. Appellants' claim fails.

¶ 21 Appellants' fourth claim is that the trial court erred when it denied Appellants' pre-trial discovery. We review a trial court's grant or denial of a discovery request for an abuse of discretion. *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1175 n. 5 (1999). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Hess,* 745 A.2d 29, 31 (Pa.Super.2000).

¶ 22 Pa.R.Crim.P. 573(B)(2)(a) provides that a defendant who files a motion for discovery must prove that the desired information is material and the request is reasonable. The Rule states:

> In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable.

**Comment**

This rule is intended to apply only to court cases. However, the constitutional guarantees mandated in *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), and the refinements of the *Brady* standards embodied in subsequent judicial decisions, apply to all cases, including court cases and summary cases, and nothing to the contrary is intended.[4]

4. "Comments" to the Rules of Criminal Procedure are not part of the rules; however,

¶ 23 The term "court case" is defined by Pa.R.Crim.P. 103 as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." "Summary case" is defined by Rule 103 as "a case in which the only offense or offenses charged are summary offenses." Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194.

■ ¶ 24 In the present case, Appellants were charged with two summary offenses, *i.e.*, harassment [5] and disorderly conduct.[6] Since summary cases are not "court cases," pretrial discovery does not apply to Appellants unless *Brady* or its progeny require otherwise.[7] Appellants do not cite, and we have not found, any *Brady*-related case that requires a trial court to consider motions for pretrial discovery in summary cases. Here, since pretrial discovery is not authorized under Rule 573 and is not mandated by *Brady* or its progeny, Appellants' claim fails.

■ ¶ 25 Appellants' fifth issue is that the trial court erred in restricting Appellants' cross-examination of a number of witnesses. Appellants do not support their argument with citation to any authority. Issues raised but not supported by citation to authority are waived. *Commonwealth v. Postell*, 693 A.2d 612, 617 n. 7 (Pa.Super.1997). Nevertheless, we have examined the trial court's rulings and conclude there was no abuse of discretion.[8] This claim fails.

■ ¶ 26 Appellants' sixth allegation is that the evidence was insufficient to sustain a verdict for harassment because they did not engage in a course of conduct. When reviewing a claim of sufficiency of the evidence, we must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. *Commonwealth v. Torres*, 564 Pa. 219, 766 A.2d 342, 344 (2001). Additionally, it is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact-finder. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939, 944 (1994). It is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substan-

this Court is entitled to treat the "Comments" as effective aids and to consider them when interpreting the meaning of a particular Rule and any amendments thereto. *Commonwealth v. Dougherty*, 451 Pa.Super. 248, 679 A.2d 779, 783 (1996).

5. 18 Pa.C.S.A. § 2709.

6. 18 Pa.C.S.A. § 5503.

7. Appellants have not provided us with any authority that *Brady* or its progeny require pretrial discovery in summary cases. The only case Appellants cite to support their claim is *Commonwealth v. Breslin*, 732 A.2d 629 (Pa.Super.1999) (suppression motions are

proper in summary cases). Appellants assert that a suppression motion is necessarily preceded by discovery. *Breslin* is not authority for this conclusion as it simply held that a suppression motion is not prohibited under the law.

8. Appellants allege that two lines of questioning for two witnesses fall under the "evidentiary ambit of 'notorious facts.'" Appellants do not cite any authority for what constitutes a "notorious fact," and do not argue why such "notorious facts" are relevant to their case. Their other claims fail to demonstrate an abuse of discretion by the trial court. Therefore, even if Appellants' claim was not waived, it would fail.

tial, if conflicting evidence, it is conclusive on appeal. *Id.*

¶ 27 The crime of harassment is defined as follows:

(a) **Harassment.**—A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

(2) follows the other person in or about a public place or places; or

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose.

18 Pa.C.S.A. § 2709(a).

¶ 28 A "course of conduct" is defined as:

A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously.

18 Pa.C.S.A. § 2709(f). A course of conduct intended to harass, annoy or alarm a person can be based on words alone. *Commonwealth v. Duncan,* 239 Pa.Super. 539, 363 A.2d 803 (1976). Also, a single act will not constitute a course of conduct under the definition of harassment. *Commonwealth v. Battaglia,* 725 A.2d 192 (Pa.Super.1999). An intent to harass may be inferred from the totality of the circumstances. *Commonwealth v. Beck,* 295 Pa.Super. 154, 441 A.2d 395 (1982).

¶ 29 Our review of the record reflects that Appellants' action constituted harassment under § 2709(a). Appellants blocked the victim's path into the courthouse. Appellant Lutes approached the victim, poked him in the chest with his finger and called him a "p*ssy." Appellant Hagerty told the victim that he would take the victim around the corner and beat him. Appellant Lutes than reiterated his previous sentiment and threatened to punch the victim in the mouth. The victim testified that he felt Appellants were forcing a confrontation, and that he repeatedly requested that Appellants not touch him. The victim had to back away from Appellants. These acts, taken together, reveal Appellants' course of conduct intended to harass, annoy or alarm the victim.

¶ 30 Next, we examine whether Appellants' conduct met the standards of 18 Pa.C.S.A. § 2709(a)(1), (2), or (3). By poking the victim on the chest, Appellant Lutes subjected the victim to physical contact. Both Appellants threatened additional physical contact. Thus, the record is sufficient to sustain a conviction of harassment under 18 Pa.C.S.A. § 2709(a)(1). Even if these actions did not satisfy § 2709(a)(1), this behavior constitutes a course of conduct under 18 Pa. C.S.A § 2709(a)(3) because the Appellants engaged in more than one act over a short period of time. Thus, the evidence is sufficient to support Appellants' convictions for harassment. This claim fails.

¶ 31 Appellants next challenge the sufficiency of the evidence to convict them of disorderly conduct. Disorderly conduct is defined as:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

. . .

(c) **Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503.

 ¶ 32 "Fighting words" will support a conviction for disorderly conduct. *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54 (1980) (defendant who followed a parking official for two days, screaming epithets at her on a public street, guilty of disorderly conduct because the words were "fighting words"). The Court reasoned that notwithstanding the freedom of speech, certain speech is not protected and can be the basis for a conviction of disorderly conduct:

Allowing the broadest scope to the language and purposes of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are of no essential part of any exposition of ideas, and are of such slight social

value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.'

*Id.* at 58.

¶ 33 The reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments. *See, Commonwealth v. DeLuca,* 528 Pa. 290, 597 A.2d 1121 (1991) (defendant violently resisted police officer's attempts to keep him at the scene of a stabbing, engaging in fighting or threatening behavior that creates a condition that was hazardous or physically offensive to others supports a conviction of disorderly conduct); *Commonwealth v. Lopata,* 754 A.2d 685 (Pa.Super.2000) (student in high school cafeteria hit a student in the arm, knocked over a chair, swung arms violently and yelled as he was escorted to the principal's office was guilty of disorderly conduct). *But see, Commonwealth v. Gilbert,* 449 Pa.Super. 450, 674 A.2d 284 (1996) (defendant merely disagreed where defendant refused police officer's requests to "quiet down" and continued to voice his disapproval with the officer's action regarding his neighbor's car).

 ¶ 34 Our review of the record reflects sufficient evidence to support Appellants' convictions of disorderly conduct. Appellants purposely approached the victim and initiated a confrontation in a public place, the county courthouse. Deputy Sheriff Wozniak had to temporarily close the security checkpoint for the courthouse in order to break up the confrontation initiated by Appellants, thereby actually causing public inconvenience. N.T.,

2/22/01, at 101. Additionally, Appellants' confrontation with the victim took place at the main entrance to the courthouse and prevented approximately twenty people from entering the building. N.T., 2/22/01, at 111. Appellants' deliberate verbal attacks demonstrate their intent to cause public alarm, annoyance or inconvenience or their reckless creation of the risk thereof.

¶ 35 Next, the record supports a conclusion that Appellants engaged in "fighting or threatening, or in violent or tumultuous behavior." Both Appellants were physically very close to the victim during the confrontation. Appellant Lutes actually touched the victim in an aggressive manner. Appellant Hagerty invited the victim to step outside so that they may engage in a physical fight. Appellant Lutes twice called the victim a vulgar name and stated he was going to punch the victim in the mouth. This behavior constitutes violent, fighting, threatening or tumultuous behavior. *DeLuca.* Therefore, sufficient evidence exists to support Appellants' convictions for disorderly conduct. This claim fails.

¶ 36 Appellants next allege that the trial court erred by not dismissing their citations as *de minimis* infractions. Our standard of review is to evaluate the trial court's ruling for an abuse of discretion. *Commonwealth v. Przybyla,* 722 A.2d 183 (Pa.Super.1998). The trial court may dismiss a prosecution if it finds the conduct constituting the offense to be *de minimis* in nature.

(a) **General rule.**—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a).

¶ 37 An offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs. *Commonwealth v. Moses,* 350 Pa.Super. 231, 504 A.2d 330 (1986) (conduct of defendant, who punched a ten-year-old boy in the stomach and took 35¢ in candy money, not *de minimis* because the boy was harmed).

¶ 38 Here, like *Moses,* Appellants' behavior did cause the victim annoyance or alarm by threatening to subject the victim to physical contact and did cause public alarm, annoyance or inconvenience. Appellants have not demonstrated that their behavior is of the type customarily tolerated. Since an application of § 312 is not warranted in this case, this claim fails.

¶ 39 Appellants' last argument challenges the fines imposed on Appellants. Appellant Lutes was fined $300.00 for each offense of harassment and disorderly conduct. Appellant Hagerty was fined $150.00 for each of the two offenses.

¶ 40 There is no absolute right to direct appellate review of a discretionary sentencing claim, and a party wishing to raise

such an issue must petition this Court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. 42 Pa.C.S.A. § 9781(b); *see also, Commonwealth v. Greene,* 702 A.2d 547, 551 (Pa.Super.1997). Challenges to the discretionary aspects of sentences must comply with Pa.R.A.P. 2119(f), which states:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

¶ 41 As Appellants argue that their sentences are excessive, they are challenging the discretion of the trial court. *Commonwealth v. McKiel,* 427 Pa.Super. 561, 629 A.2d 1012 (1993) (stating that a sentence is manifestly excessive challenges the sentencing court's discretion). Appellants have not included the required statement in their brief. In fact, Appellants' entire argument on this issue constitutes one paragraph containing 13 lines of text. This does not fulfill the requirements of Rule 2119(f). While this omission would ordinarily preclude our review of this issue, the Commonwealth has not objected to this defect. Therefore, we will examine this issue to determine whether a substantial question exists. *Greene,* 702 A.2d at 551.

¶ 42 We are guided in our examination by the following principles:

The determination of whether a substantial question exists must be made on a case-by-case basis. It is only where an aggrieved party can articulate clear rea-

sons why the sentence issued by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. This court has been inclined to find that a substantial question exists where the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms underlying the sentencing process.

*Id.* Also, a bald allegation that a sentence is excessive does not raise a substantial question. *Commonwealth v. Petaccio,* 764 A.2d 582, 587 (Pa.Super.2000).

¶ 43 Appellants fail to advance a colorable argument that the sentencing judge's actions met either factor in *Greene.* The record reflects the trial court knew about their "impeccable backgrounds" and that the offenses were relatively minor. Next, Appellants fail to show how a short time deliberating is probative of either factor. Appellants also fail to show why the location of the crime is probative. Lastly, Appellants set forth the minimum sentences for 16 P.S. § 2329, "Disorderly Conduct in and About Court Houses and Jails Prohibited." Since Appellants were not convicted under this section, the minimum sentence under this section is irrelevant. Appellants' argument concerning the discretionary aspects of their sentences amounts to a bald allegation of excessiveness and lacks factual support. Therefore, Appellants have not raised a substantial question for review.[9]

¶ 44 Judgments of sentence affirmed.

---

9. We note that Appellants' sentences are not excessive and, it appears, quite lenient. Ap-

pellants were convicted of two summary offenses. As such, Appellants were subject to a maximum fine of $300.00 for each summary offense pursuant to 18 Pa.C.S.A. § 1101(7).

Also, the trial court could have sentenced Appellants to a maximum of 90 days in jail under 18 Pa.C.S.A. § 106(c)(2). In fact, the trial court only imposed fines on Appellants.