J-S53004-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RYAN SCOTT CLAPPER, | : | |
| | : | |
| Appellant | : | No. 1414 WDA 2013 |

Appeal from the Judgment of Sentence July 29, 2013,
Court of Common Pleas, Bedford County,
Criminal Division at No. CP-05-SA-0000013-2013

BEFORE:  DONOHUE, OLSON and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:              **FILED AUGUST 26, 2014**

Ryan Scott Clapper ("Clapper") appeals from the judgment of sentence entered on July 29, 2013 by the Court of Common Pleas of Bedford County, Criminal Division, following his conviction for summary harassment.[1]  After careful review, we affirm.

The facts and procedural history of this case are summarized as follows.  On August 19, 2012, Clapper was a correctional officer at the Bedford County Correctional Facility.  **See** N.T., 7/11/13, at 6-8.  On that date, Clapper, along with Officer Annette Calhoun ("Officer Calhoun"), were in the process of transferring inmate Kaylee Ringler ("Ringler") from the disciplinary segregation cellblock to the indoor recreation facility.  **Id.** at 7-8.  When Officer Calhoun placed Ringler in handcuffs and shackles for the

---

[1]  18 Pa.C.S.A. § 2709(a)(3).

*Retired Senior Judge assigned to the Superior Court.

transfer, Ringler complained that they were cold. *Id.* at 10. Ringler testified that after she complained about the handcuffs and shackles being cold, Clapper told her that "maybe we should put them in the freezer … for whenever … we come get you." *Id.*

After transferring Ringler to the indoor recreation facility, Officer Calhoun removed the handcuffs and shackles from Ringler and gave them to Clapper. *Id.* at 35. Clapper proceeded to take the handcuffs and shackles and place them in a freezer for approximately one hour while Ringler was at the indoor recreation facility. *See id.* at 41, 54-55. After Ringler's recreation time was complete, Clapper placed the now frozen handcuffs and shackles back on Ringler for her transfer back to the disciplinary segregation cellblock. *Id.* at 13-14. Ringler testified that Clapper told her that the reason he froze the handcuffs and shackles was because she had been previously "bitching" about the shackles being cold before her transport to the indoor recreation facility. *Id.* at 14-15.

Clapper, along with Officer Swain King ("Officer King"), transferred Ringler back to her cell. *Id.* at 43-44. Once Clapper and Officer King returned Ringler to her cell, Clapper removed the handcuffs and shackles and gave them to Officer King, who noticed that they were cold to the touch and wet with condensation. *Id.* at 44.[2] Ringler claimed that the frozen

---

[2] Officer King also testified that Clapper had told him that he froze the handcuffs and shackles. N.T., 7/11/13, at 41.

handcuffs and shackles left red marks and blisters on her wrists and ankles. *Id.* at 12, 15. Ringler testified that after she asked to file a grievance against Clapper, he came back to her cellblock asking why she requested a grievance. *Id.* at 11. When Ringler told Clapper that was in regards to the frozen handcuffs and shackles, he responded, "prove it." *Id.*

The following day, Ringler informed Officer Murphy of what had transpired with the frozen handcuffs and shackles and Officer Murphy reported the incident to Lieutenant Richard Gunther ("Lieutenant Gunther"). *Id.* at 12. Lieutenant Gunther reviewed video of Clapper going into a room in which there was a freezer and coming out with handcuffs and shackles. *Id.* at 54-55. Lieutenant Gunther interviewed Clapper and asked him if he put frozen handcuffs and shackles on Ringler, to which Clapper answered that he did not. *Id.* at 57. As a result of the investigation, the Bedford County Correctional Facility terminated Clapper's employment. *Id.*

The Bedford County Correctional Facility notified the State Police and the Commonwealth charged Clapper with one count of harassment as a summary offense. On September 21, 2013, the Magisterial District Judge found Clapper guilty of one count of summary harassment. On March 1, 2013, Clapper filed a summary appeal to the Bedford County Court of Common Pleas. On July 11, 2013, following a trial *de novo*, the trial court likewise found Clapper guilty of one count of summary harassment and sentenced him to 45 to 90 days of incarceration.

On July 24, 2013, the trial court appointed appellate counsel to represent Clapper. On August 8, 2013, Clapper filed a motion for reconsideration of sentence *nunc pro tunc*. The trial court accepted Clapper's motion for reconsideration of sentence as timely filed, but on August 12, 2013, the trial court denied it. That same day, Clapper filed a notice of appeal. On September 10, 2013, the trial court ordered Clapper to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On September 26, 2013, Clapper timely filed his Rule 1925(b) statement.

On appeal, Clapper raises the following issues for our review:

> I. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTION FOR SUMMARY HARASSMENT?
>
> II. WHETHER THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN SENTENCING THE APPELLANT TO 45 to 90 DAYS [OF] INCARCERATION FOR A SUMMARY OFFENSE?

Clapper's Brief at 3.

For his first issue on appeal Clapper challenges the sufficiency of the evidence for his conviction of summary harassment. Clapper's Brief at 8-9. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all

> reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013)

(internal quotations and citations omitted).

Moorefield's conviction for harassment falls under section 2709(a)(3) of the Crimes Code. Section 2709(a)(3) states the following:

> **(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> *       *       *

> > (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

18 Pa.C.S.A. § 2709(a)(3). The sole argument Clapper makes is that the evidence was insufficient to prove that by placing frozen handcuffs and shackles on Ringler, he engaged in a "course of conduct" under section 2709(a)(3). Clapper's Brief at 9. Clapper asserts that his placement of frozen handcuffs and shackles on Ringler only constituted a single, isolated act, which he contends does not represent a "course of conduct" under section 2709(a)(3). *Id.* at 9.

Section 2709(f) defines a "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.C.S.A. § 2709(f). Our Court has held that "a single act will not constitute a course of conduct under the definition of harassment." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002) (citing *Commonwealth v. Battaglia*, 725 A.2d 192, 194 (Pa. Super. 1999)). Moreover, our Court has held that in order for a defendant to have engaged in a harassing "course of conduct," "there must be evidence of a repetition of the offensive conduct." *Commonwealth v. Tedesco*, 550 A.2d 796, 799 (Pa. Super. 1988) (citation omitted).

In prior cases, this Court has addressed what constitutes a "course of conduct" under section 2709(a)(3) and (f). In *Lutes*, for example, our Court found the following actions representative of a "course of conduct":

> Appellants blocked the victim's path into the courthouse. Appellant Lutes approached the victim, poked him in the chest with his finger and called him a 'p*ssy.' Appellant Hagerty told the victim that he would take the victim around the corner and beat him. Appellant Lutes than reiterated his previous sentiment and threatened to punch the victim in the mouth. The victim testified that he felt Appellants were forcing a confrontation, and that he repeatedly requested that Appellants not touch him. The victim had to back away from Appellants. These acts, taken together, reveal Appellants' course of conduct intended to harass, annoy or alarm the victim.

*Lutes*, 793 A.2d at 961. Thus, our Court held that the combination of blocking the victim's path into the courthouse, poking him in the chest, calling him an obscenity, and threatening him amounted to a "course of conduct" under section 2709(a)(3) and (f). *See id.*

In contrast to the *Lutes* decision is *Commonwealth v. Schnabel*, 344 A.2d 896 (Pa. Super. 1975). In *Schnabel*, the Appellant owned a large tract of land that he divided into lots to rent as week-end or summer cottages. *Schnabel*, 344 A.2d at 897. Many of the cottages did not have modern plumbing and those cottages got their water from a well on the Appellant's property through hoses owned and supplied by the Appellant. *Id.* Jenkins, one of the Appellant's tenants, permitted the water to run in his cottage constantly, which caused the septic tanks on the Appellant's land to overflow. *Id.* As a result, the Appellant committed a single act, namely to sever the hose that supplied water to Jenkins's cottage. *Id.* Our Court reversed the Appellant's harassment conviction holding that the Appellant's

"single, isolated act cannot be regarded as a course of conduct, entailing criminal sanctions, within the meaning of the statute under consideration." *Id.* at 898.

Based on *Lutes* and *Schnabel*, we can conclude that a "course of conduct" under section 2709(a)(3) and (f) cannot be a single, isolated act. *See Schnabel*, 344 A.2d at 898. Likewise, a "course of conduct" need not consist of the repetition of a particular act, but rather may include a series of related acts, including threats, taunts, confrontations, and other conduct, done with the intent to harass, annoy, or alarm the victim. *See Lutes*, 793 A.2d at 961.

Applying these principles to the present case, we conclude that the trial court did not err in finding Clapper guilty of summary harassment. In viewing the evidence in the light most favorable to the Commonwealth as the prevailing party in the court below, the certified record reveals the following. Clapper threatened Ringler with freezing the handcuffs and shackles after she complained about them being cold prior to her transfer to the indoor recreation facility. N.T., 7/11/13, at 10. Clapper then proceeded to freeze the handcuffs and shackles. *See id.* at 41, 54-55. After Ringler completed her indoor recreation time, Clapper placed the frozen handcuffs and shackles on Ringler and forced her to walk back to her cell in them. *Id.* at 13-14. Clapper told Ringler that the reason he froze the handcuffs and shackles was because she was "bitching" about them being cold. *Id.* at 14-

15. Subsequently, Clapper returned to Ringler's cellblock after she requested a grievance against him to tell her that she could not prove what he had done. *Id.* at 11.

We find that Clapper's behavior was more akin to that in *Lutes* than in *Schnabel*. Clapper did not merely place frozen handcuffs and shackles on Ringler as his appellate brief suggests. Similar to *Lutes*, in addition to placing her in frozen handcuffs and shackles, Clapper also threatened Ringler with freezing the handcuffs and shackles, taunted her with his explanation for why he froze the handcuffs and shackles, and confronted her when she requested a grievance. Thus, the record supports the trial court's conclusion that Clapper's actions represented "a pattern of actions composed of more than one act over a period of time ... evidencing a continuity of conduct." *See* 18 Pa.C.S.A. § 2709(f). Accordingly, Clapper's sufficiency of the evidence claim fails.

For his second issue on appeal, Clapper raises a discretionary aspects of sentence claim. Clapper's Brief at 9-11. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). "Two requirements must be met before we will review this challenge on its merits." *Id.* "First, an appellant must set forth in his brief a concise statement of the reasons relied upon for

allowance of appeal with respect to the discretionary aspects of a sentence." *Id.* "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Id.* A substantial question exists when, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005).

In the present case, Clapper's appellate brief contains the requisite 2119(f) concise statement. *See* Clapper's Brief at 7. Clapper argues that his sentence was manifestly excessive. *Id.* at 7, 9-11. A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question for our review. *See Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011). Clapper further contends that the trial court did not take into account his rehabilitative needs when sentencing him. Clapper's Brief at 7, 10-11. A claim that a sentencing court failed to consider the rehabilitative needs of the defendant likewise presents a substantial question. *See Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010). Because Clapper has complied with the technical requirements for consideration of a challenge to the discretionary aspects of a sentence, we will consider his claim on its merits.

Our standard of review when considering discretionary aspects of sentencing claims is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

**Commonwealth v. Cook**, 941 A.2d 7, 11-12 (Pa. Super. 2007) (internal quotations and citations omitted).

Clapper contends that his sentence is manifestly excessive because it constitutes the same sentence he would have received had the trial court found him guilty of a second-degree misdemeanor, such as simple assault, and imposed a sentence in the aggravated range. Clapper's Brief at 7, 9-11. The sentencing guidelines, however, do not apply to sentencing for summary offenses, **see** 204 Pa.Code § 303.1(a)[3], and thus provide no basis here for

_____

[3]  Section 303.1(a) of the sentencing guidelines states that "[t]he court shall consider the sentencing guidelines in determining the appropriate sentence

concluding that the trial court committed an error of law, exercised its judgment for reasons of partiality, prejudice, bias, or ill-will, or otherwise arrived at a manifestly unreasonable decision. To the contrary, the certified record reflects that the trial court sentenced Clapper to a statutorily permitted sentence[4] and clearly set forth its reasons for doing so. The trial court found that Clapper was not a risk to the public and that he did not have any great rehabilitative needs. N.T., 7/11/13, at 111-12. The trial court's primary concern was with the gravity of the offense as it relates to the impact on the community. *See id.* at 112. The trial court stated that "[w]hat [Clapper] did was affect the criminal justice system … as a whole and put into question the legitimacy … of the jail and the criminal justice system." *Id.* Absent a manifest abuse of discretion, no relief is due.

Clapper also contends that the trial court abused its discretion in sentencing Clapper because it failed to consider his rehabilitative needs in sentencing him. Clapper's Brief at 7, 9-11. A claim that the trial court failed to consider the rehabilitative needs of a defendant in sentencing implicates section 9721(b) of the Sentencing Code. Section 9721(b) provides:

> [T]he court shall follow the general principle that the
> sentence imposed should call for confinement that is

---

for offenders convicted of, or pleading guilty or *nolo contendere* to, felonies and misdemeanors." 204 Pa.Code § 303.1(a).

[4] Section 106(c)(2) of the Crimes Code provides that a person convicted of a summary offense "may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." 18 Pa.C.S.A. § 106(c)(2).

> consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). Here, the record reflects, from the above referenced statements, that the trial court considered each of the factors of section 9721(b). **See supra**, p. 12; **see also** N.T., 7/11/13, at 111-112. Therefore, because the trial court took into consideration each of the factors in section 9721(b), Clapper's argument that the sentencing court did not take into consideration his rehabilitative needs fails. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Clapper.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014