J-S31012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH MARK SILFIES | : | |
| | : | |
| Appellant | : | No. 1783 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 26, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002076-2019

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED SEPTEMBER 15, 2020**

Keith Mark Silfies appeals from the judgment of sentence of time served (153 days) to one year of imprisonment, followed by one year of probation, imposed after he was convicted of one count of disorderly conduct and four counts of harassment. We affirm.

The trial court's summary of the underlying facts, which is supported by the record, is as follows:

> In this case, [Appellant] admitted himself to the Reading Hospital emergency department for treatment of his right wrist. While in the emergency department, [Appellant] indicated to his healthcare providers that he was not feeling well mentally, and he asked to speak with a psychiatrist on the condition that he not be sent "anywhere that I'm not going to be allowed to walk out." He was assured that he would not.
>
> Before he was discharged, [Appellant] decided that he wanted to exit the building. [Appellant] became agitated when he was prevented from leaving through the door he wished to exit. His conduct drew the attention of hospital security, leading to an unfortunate exchange during which the hospital guard[,

Christopher Shirey,] escalated the situation and participated in a verbal back-and-forth with [Appellant]. [Appellant] eventually made his way to a hallway where he could safely exit the building with the guidance of other hospital staff members. Unbelievably, as [Appellant] was exiting, [Shirey] felt compelled to follow [Appellant] into the hallway and watch as [Appellant] left. This enraged [Appellant], who was admittedly having a psychiatric episode and actively seeking help.

In response to [Shirey]'s conduct, [Appellant] became further aggravated and tried swatting away those members of the hospital staff who were escorting him out of the building. [Shirey] stood safely further down the hall then slipped back through a locked door.

As a result of the verbal exchange between [Appellant] and [Shirey], the Commonwealth charged [Appellant] with one count of terroristic threats. He was found not guilty. Based upon [Appellant]'s attempts to free himself from his escort while being led out of the building, the Commonwealth charged [Appellant] with six counts of harassment. Each count involved verbally communicating threatening words to an individual member of hospital staff.[1] He was found guilty of four of the six counts. Finally, the Commonwealth charged [Appellant] with a single count of disorderly conduct for engaging in fighting, threatening behavior, or in violent or tumultuous behavior while he was an admitted patient at the hospital. He was found guilty of disorderly conduct.

Trial Court Opinion, 2/7/20, at 1-3 (citations omitted).

_____

[1] Shirey testified that Appellant directed homophobic slurs at him and informed him that "he was going to wait for me after work, and then his next comment was about finding my wife; beating the shit out of me and then fucking my wife afterwards." N.T. Trial, 8/28/19, at 19-20, 28. Security guards Mark Rippert and Mathias Rodriguez testified that, as they and other security personnel, including Carolyn Johnson, attempted to get Appellant to disengage from his altercation with Shirey and leave the building, Appellant threatened all of them, doing karate moves and telling each of them individually that he was "going to kick your ass." *Id*. at 44. *See also id*. at 39.

Appellant was sentenced as indicated above on September 26, 2019. Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents two questions for our consideration: (1) "Whether the evidence was sufficient to establish all elements of disorderly conduct?" and (2) "Whether the evidence was sufficient to establish all elements of harassment?"[2] Appellant's brief at 13 (unnecessary capitalization omitted).

We begin with a review of the applicable legal principles.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

---

[2] The trial court opined that it had no Pa.R.A.P. 1925(a) obligation to address Appellant's issues because the sufficiency challenges raised in his statement of errors complained of on appeal "did not involve a claim of error[.]" Trial Court Opinion, 2/7/20, at 4. That construction does not further the purpose of Rule 1925, which is to assist this Court in conducting meaningful appellate review. *See **Commonwealth v. McBride***, 957 A.2d 752, 758 (Pa.Super. 2008). More importantly, regardless of whether they qualify as "error," Appellant would have waived his issues for appeal had he not raised them in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii).

The trial court opted to refer this Court to the portion of the trial transcript which recorded the trial court's reasoning for denying Appellant's motion for judgment of acquittal. *See* Trial Court Opinion, 2/7/20, at 4 (citing N.T. Trial, 8/28/19, at 48-55). However, little found therein assists our review.

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa.Super. 2019) (internal quotation marks omitted).

Appellant first argues that the evidence was insufficient to support his conviction for disorderly conduct. Appellant was convicted under the subsection of the statute that provides as follows: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1).

Appellant does not dispute that the Commonwealth proved the *actus reus* element of the crime, *i.e.*, that he engaged in threatening and violent behavior. Rather, he contends that the evidence does not establish the *mens rea* element: that he intended to cause, or recklessly created a risk of causing, public inconvenience, annoyance, or alarm. Appellant maintains that his only intent was to go home. *See* Appellant's brief at 26. He further asserts that he could not have intended to cause public inconvenience or risk thereof because the unit of the hospital in which the incidents took place was restricted and not open to a substantial group of the public. *Id*. at 27.

We find no merit in Appellant's arguments. First, Appellant's contention that the restricted-access psychiatric unit of the hospital was not a "public" area within the meaning of the disorderly conduct statute is unavailing. The statute defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa.C.S. § 5503(c).

The testimony at trial established that there were other patients, nurses, and hospital personnel present in the psychiatric emergency services unit at the time of Appellant's initial outburst of banging on doors, setting off an alarm, pacing back and forth while being loud and aggressive. *See* N.T. Trial, 8/28/19, at 13-15. Moreover, as the Commonwealth notes, Appellant's threatening and tumultuous behavior extended out of the restricted unit as the additional security guards attempted to escort Appellant out of the hospital. *See* Commonwealth's brief at 12 (citing N.T. Trial, 8/28/19, at 13-16, 35-36, 59). Based upon the evidence offered by the Commonwealth, the areas at issue were no less open to the public than prisons, which are expressly included as public place in the disorderly conduct statute.

Second, the fact that Appellant just wanted to leave does not foreclose finding the specific intent element of the statute. As this Court has explained, that element "may be met by a showing of a reckless disregard of the risk of

public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." *Commonwealth v. Troy*, 832 A.2d 1089, 1094 (Pa.Super. 2003). Hence, the fact that his tumultuous behavior was directed at Shirey in an effort to get him to allow Appellant to leave does not render the evidence insufficient, where he recklessly created a risk of alarming the members of the public present in the restricted unit.

Moreover, even if Appellant's initial outburst was solely motivated by a desire to leave the hospital and fell below the threshold for reckless disregard, that intent cannot reasonably explain his actions outside of the unit. When security personnel other than Shirey had Appellant in the hallway outside of the restricted unit, Appellant actively resisted leaving in order to continue making threats to Shirey and the other hospital personnel. *See* N.T. Trial, 8/28/19 at 37-39 (explaining that while five guards attempted to escort Appellant out of the hospital, he resisted leaving and attempted to go back after Shirey and threatened all six of the guards). Accordingly, Appellant's arguments concerning disorderly conduct present no basis for this Court to disturb that conviction. *Accord Commonwealth v. Rahman*, 75 A.3d 497, 503 (Pa.Super. 2013) (holding intent to cause inconvenience established by evidence that the defendant ignored warnings to cease loud and boisterous behavior at a city council meeting and escalated his physical aggression as officers attempted to escort him out of the meeting).

Appellant next claims that the evidence was insufficient to sustain his harassment convictions. He was convicted of four counts of harassment: one each for victims Shirey, Carolyn Johnson, Mark Rippert, and Mathias Rodriguez. As indicated above, as the officers attempted to get Appellant to leave the hospital rather than stay to confront Shirey, Appellant informed each of them that he was going to "kick your ass." *See*, *e.g.*, N.T. Trial, 8/28/19, at 44. Appellant himself testified that he told Shirey, "I'm going to fuck you up." *Id*. at 61.

The statute defining harassment provides, in pertinent part, that one is guilty of harassment "when, with intent to harass, annoy or alarm another, the person: . . . communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S. § 2709(a)(4). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa.Super. 2013) (internal quotation marks omitted).

Appellant does not contend that the contents of his communications fail to satisfy the statute. Rather, he argues that his intent was not to harass, but "to prevent the security officers from keeping him in the unit." Appellant's brief at 33. He claims that his statements to the officers other than Shirey "were a response to perceived harassment." *Id*. at 34. He contends that he only made "colorful" comments to them when he believed one was going to

- 7 -

push him, and that when he said he was going to "fuck them," he meant that he was going to get them in trouble by calling the police. *Id*.

Appellant's contentions are meritless. As discussed above, Appellant hurled his colorful threatening communications at the four security guards while they were attempting to get him out of the hospital. As such, not only is Appellant's argument that his intent was to stop the guards from keeping him there contrary to proper application of our standard of review, which requires us to view the evidence in the light most favorable to the Commonwealth, but it also makes no sense.

From the totality of the circumstances, the fact finder could reasonably conclude that Appellant's threatening communications made while he actively resisted efforts to remove him from the building were intended to harass, annoy, or alarm their targets. *Accord Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa.Super. 2002) (affirming harassment conviction where the defendants blocked the victim's path, "poked him in the chest with his finger and called him a 'p\*ssy,'" and told him that they would punch him in the mouth and "take [him] around the corner and beat him").

Appellant additionally complains that the entire incident happened "because Shirey mishandled Appellant completely." Appellant's brief at 35. Since he had diagnosed mental health issues, yet voluntarily sought help, Appellant protests that it was completely unexpected that he would be

provoked like that by someone working in a psychiatric emergency services unit, and that the other officers would handle him so roughly. *Id*.

Appellant's points are well taken. It is clear from the trial court opinion that it found Shirey's actions incredible, and faulted Shirey for escalating the situation and reengaging with Appellant as the others attempted to deescalate. *See*, *e.g.*, Trial Court Opinion, 8/28/19, at 2. However, the Commonwealth opted to pursue the charges and presented sufficient evidence to support the convictions. Consequently, we must affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2020